[Civ. No. 5275.  Second Appellate District, Division One.—April 21, 1926.]

MRS. PAULINE LANDSRATH, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—REVIEW OF FINDINGS—EVIDENCE —CERTIORARI.—The power to review findings of the Industrial Accident Commission is limited to a consideration of whether there is any substantial evidence upon which such findings may rest, and in the absence of evidence to support a given finding it cannot stand; but if a mere conflict appears in the evidence, or if opposing inferences may reasonably be drawn therefrom,

1.  See 27 Cal. Jur. 576, 579.

the conclusion reached by the commission cannot be disturbed by the appellate court.

[2] ID.—HUSBAND AND WIFE—INJURIES RESULTING IN DEATH OF HUS-BAND—DEPENDENCY OF WIFE—EVIDENCE—PRESUMPTIONS.—Under section 14 of the Workmen's Compensation Act, a wife living with her husband at the time he receives an injury resulting in his death is conclusively presumed to have been wholly dependent upon her husband for support, but in cases other than those for which the statute expressly provides the question of whether a given person is a "dependent" must be determined in accordance with the facts as they may appear as of the time of the injury.

[3] ID.—MARRIAGE—PRESUMPTIONS—EVIDENCE—FINDINGS.—In a pro-ceeding in *certiorari* to review an award of the Industrial Acci-dent Commission denying compensation to one claiming to be the widow of an employee, who was killed while engaged in his employment, where it was established by uncontradicted evidence that petitioner was living with said employee at the time of his death and that they conducted themselves as husband and wife, held themselves out and were publicly recognized as husband and wife, and that a marriage ceremony had been performed, a finding of the commission that the evidence was insufficient to show marriage was not supported; in view of section 1959 of the Code of Civil Procedure, defining a presumption to be a deduction which the law directs to be made from particular facts, and sub-division 30 of section 1963 of the Code of Civil Procedure, which provides that a man and woman deporting themselves as husband and wife are presumed to have entered into a lawful contract of marriage.

[4] ID.—EXISTENCE OF MARITAL RELATION—NEGATIVE EVIDENCE.—In such proceeding, the fact that deceased had stated that he re-garded marriage as "a slip of paper," that there was an unproved rumor that prior to his marriage with petitioner he had lived with another woman for eleven years without being married to her, and that no record of the marriage of petitioner and de-ceased was produced, was merely negative evidence, not touching the question of the sufficiency of the evidence adduced sustaining the marriage between the parties.

[5] EVIDENCE — CONFLICT OF EVIDENCE — INFERENCES — UNSUPPORTED FINDING.—Mere inferences will be allowed to stand, not against the facts they represent, but only in lieu of proof of such facts, and where facts are proven to be contrary thereto no conflict in the evidence arises.

---

2.    See 27 Cal. Jur. 297.

3.    See 27 Cal. Jur. 297.

5.    See 10 Cal. Jur. 740.

[6] Workmen's Compensation Act — Compensation for Death of Employee — Woman Living With Deceased as Wife — Good Faith — Dependency. — A woman who, in good faith, believed herself to be the wife of a man, living and cohabiting with him, and at all times holding herself out and recognized as such, is entitled to compensation for his death as a "dependent" under subdivision 1 of section 14 of the Workmen's Compensation Act (Stats. 1917, p. 884).

---

(1) Workmen's Compensation Acts, C. J., p. 122, n. 39, 40. (2) Workmen's Compensation Acts, C. J., p. 56, n. 24, p. 59, n. 59. (3) 22 C. J., p. 82, n. 50; 38 C. J., p. 1322, n. 57. Workmen's Compensation Acts, C. J., p. 115, n. 37. (4) 23 C. J., p. 42, n. 77. (5) 22 C. J., p. 83, n. 54, 58. (6) Workmen's Compensation Acts, C. J., p. 59, n. 59.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission. Award annulled.

The facts are stated in the opinion of the court.

Leslie H. Kranz for Petitioner.

G. C. Faulkner, Warren H. Pillsbury and Adams, Adams & Binford for Respondents.

HOUSER, J.—The purpose of this proceeding is to review an award made by the respondent Industrial Accident Commission.

From the return herein it appears that one A. H. Landsrath was killed while engaged in his employment and that in due course the respondent Commission made an award in the sum of four thousand nine hundred dollars in favor of the infant daughter of the deceased. The petitioner herein, who claims to be the widow of the deceased, was denied any relief; and it is because of such latter fact that a reviewal of the proceedings before the Industrial Accident Commission is sought by petitioner, to the end that her rights may be finally determined.

It is conceded by the parties hereto that the reason for the failure of the Commission to award any relief to the petitioner was predicated upon its finding of fact as follows:

---

6. See 27 Cal. Jur. 297.

"That the evidence is insufficient to establish as a fact that the applicant Pauline Landsrath was dependent upon the employee at the time of the sustaining of said injury by him or that she was his wife at said time."

[1] The power of this court to review findings of fact by the Industrial Accident Commission is limited to a consideration of the question of whether there is any substantial evidence upon which such findings may rest. In the absence of evidence to support a given finding, it cannot stand; but if with relation to such finding a mere conflict appears in the evidence, or if opposing inferences may reasonably be drawn therefrom, the conclusion reached by the Commission is final and cannot be disturbed by this court. (*Walker* v. *Industrial Acc. Com.*, 177 Cal. 737 [L. R. A. 1918F, 212, 171 Pac. 954].) So far, therefore, as concerns this tribunal in the instant case, it is authorized to consider the evidence adduced on the hearing before the respondent Commission for the purpose only of determining its sufficiency to warrant the finding that the evidence was insufficient to establish either the dependency of the petitioner or that she was the widow of the deceased.

[2] By one of the terms of the statute (sec. 14, Stats. 1917, p. 831), a wife living with her husband at the time he received an injury which resulted in his death is conclusively presumed to have been wholly dependent for support upon her husband. In cases other than those for which the statute expressly provides, the question of whether a given person is a "dependent" must be determined in accordance with the facts as they may appear as of the time of the receipt of the injury by the employee. It therefore becomes of importance to ascertain whether at the time A. H. Landsrath received the injury the petitioner was his wife; in which case she would be conclusively presumed to be "dependent" and entitled to share in the award; or, failing in establishing the fact that she and the deceased were husband and wife at the time in question, in accordance with the provisions of the statute she may otherwise be legally considered as a "dependent" and as such entitled to recognition in the award.

The evidence of the marriage between the petitioner and A. H. Landsrath included the following facts: That before the marriage took place petitioner had been engaged to be

married to Landsrath 'for a period of about four weeks; that petitioner accompanied Landsrath in an automobile to the courthouse in Jeffersonville, Indiana, for the purpose of procuring a marriage license; that petitioner sat in the automobile while Landsrath was inside the courthouse presumably for the purpose of procuring the license; that immediately thereafter Landsrath had a "paper" in his possession which petitioner "supposed" was a license; that thereupon the parties went to a "shabby" office on the window of which was a sign "Justice of the Peace"; that Landsrath handed the "paper" which he had in his hand when he came out of the courthouse to a man who afterward performed the marriage ceremony between the parties; that the ceremony was performed in the presence of a witness; that before that time petitioner had been once married and was familiar with the marriage ceremony; that the magistrate who performed the marriage ceremony between petitioner and Landsrath gave to petitioner a marriage certificate; that after the ceremony had been performed petitioner saw Landsrath with some money in his hand and presumed that he gave it to the magistrate; that immediately thereafter the parties went to the home of the mother of petitioner and, before coming to California, lived with a sister of petitioner for a period of approximately two months; that after their arrival in California, for a period of about one month the parties lived with petitioner's "folks," including the mother and the sister of petitioner, the sister's husband and a little boy; that continually from the date of the marriage of petitioner and Landsrath they lived together as husband and wife, deported themselves as husband and wife, held themselves out to the world as husband and wife, were reputed to be husband and wife, were publicly recognized as husband and wife, declared themselves to be husband and wife, were received among their friends, relatives, and neighbors as husband and wife, and that at all times after said marriage ceremony petitioner believed herself to be the wife of said Landsrath.

As opposed to the conclusion that the parties were legally married, the respondent suggests that the evidence showed that prior to the marriage between petitioner and Landsrath

he had "expressed the view that 'marriage meant only a slip of paper anyway, and he didn't see that it made any difference''; to which statement petitioner immediately responded that she "didn't believe in anything like that and would not under any circumstances ever live with anyone without being married legally," and that she would insist on a ceremony of marriage; to which Landsrath immediately acceded; that some time after the marriage ceremony was performed petitioner was "informed" that for a period of eleven years Landsrath had lived with another woman without being married to her; that at the time the marriage license was issued and the marriage ceremony between the parties was performed, records of the issuance of marriage licenses and of marriage certificates were being kept at Jeffersonville, Indiana, but that petitioner failed to produce any evidence showing a record of either the marriage license or the marriage certificate, or that the records covering the period in question had been destroyed.

From an examination of the return of the writ herein it may be noted, as hereinbefore set forth, that the finding is not that no marriage ceremony was performed, but that the finding declares "that the evidence is *insufficient* to establish as a fact that the applicant Pauline Landsrath was dependent upon the employee, . . . or that she was his wife at said time." No attempt is made by the findings to actually determine the fact in issue. They are simply declarant of the opinion of the Commission that there is a lack in the quantity of evidence necessary to a determination of the point involved.

[3] By section 1959 of the Code of Civil Procedure a presumption is defined as a deduction which the law directs to be made from particular facts. Section 1963 of the Code of Civil Procedure contains a list of presumptions which "are satisfactory, if uncontradicted." Among them is the presumption (30) "that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage." The evidence introduced at the hearing before the Commission and which was uncontradicted, among other things, established the fact beyond peradventure that the petitioner and Landsrath conducted themselves as husband and wife. In addition thereto, the

positive first hand testimony of the petitioner was that a marriage ceremony had been performed by which she was married to Landsrath. While testimony might have been given by the justice of the peace who performed the marriage ceremony, or by the witness thereto, such testimony, as well as evidence of the issuance of the marriage license or the recordation of the marriage certificate, would have been merely cumulative of facts as testified to by the petitioner. Her testimony of the surrounding facts, including the performance of the marriage ceremony, was primary evidence and was sufficient in itself as a basis for a conclusion that petitioner and Landsrath had been legally married. In view, therefore, of the legal presumption of marriage arising from the conduct of the parties to which reference heretofore has been had, together with the undisputed testimony of the petitioner, it must be held that the evidence, instead of being *insufficient,* as found by the Commission, was ample to establish the fact that petitioner was the wife of Landsrath at the time he received the injury which resulted in his death.

[4] But it is suggested by respondent that the question presented is whether the facts that Landsrath had expressed the view that "marriage meant only a slip of paper"; that there was an unproved rumor that prior to his marriage with petitioner he had lived with a woman for eleven years without being married to her; and that no record of the marriage between the parties herein was produced—raise a reasonable inference upon which the finding by the Commission to which reference has been had may be sustained. Such assumed facts are wholly negative in character and do not touch the question of the *sufficiency* of the evidence adduced sustaining the marriage between the parties. The only possible office which evidence of the nature of that referred to could fulfill would be that of creating a conflict in the evidence which, were it of sufficient strength and vitality, might justify a positive finding of fact that no marriage ceremony had been performed. That a man stated that he regarded marriage as "a slip of paper"; that a rumor existed to the effect that during a period of eleven years he had lived with a woman without being married to her; and that no public record of the issuance of a marriage license or the performance of a marriage ceremony was

*produced*—certainly do not rise to the dignity of constituting a reason upon which a deduction or an inference of the nonperformance of the marriage ceremony might be founded. The "rumor," of course, is no evidence at all; nor does the failure on the part of the petitioner to produce the record to which we have referred necessarily establish the fact that the record is nonexistent. The same thing is true with reference to the alleged view of Landsrath that a marriage was but "a slip of paper." Assuming that he did make such a statement, it would merely serve as a foundation for the inference that he had no regard for the marriage ceremony—not of the ultimate fact that no marriage ceremony had actually been performed.

[5] There is, then, no reasonable inference contained in the evidence which conflicts with the positive testimony given by the petitioner that a marriage ceremony was performed and that she was the wife of Landsrath at the time he received the injury which resulted in his death. Moreover, it has been ruled in effect that a mere inference will not always be enough to create a conflict in the evidence. In the case of *Maupin* v. *Solomon,* 41 Cal. App. 323 [183 Pac. 198], it is said (syllabus): " . . . inferences are allowed to stand not against the facts they represent, but only in lieu of proof of such facts, and where the facts are proven to be contrary thereto, no conflict arises and a finding of the jury in accordance with such inference cannot be supported thereby."

The question presented in that case was whether positive testimony that an employee was not acting in the scope of his employment at the time a collision occurred between two automobiles which caused the damage and which damage was the foundation for the action could be overcome by an inference to the contrary. In denying the petition for hearing by the supreme court after decision by the district court of appeal, ruling as hereinbefore indicated, the supreme court said in part: "In this case the direct uncontradicted evidence introduced in response to the *prima facie* case as to the circumstances under which the employee of appellant was driving appellant's automobile was of such a nature as to leave no reasonable ground for the inference based solely on the fact of appellant's ownership of the automobile and the further fact that the person driving

was an employee of appellant, that the driver was acting within the scope of his employment at the time of the accident. The verdict, therefore, was contrary to the evidence, and this is all we understand the opinion of the district court of appeal to decide.''

In the case of *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332 [187 Pac. 996], the court distinguishes presumptions from inferences, and says: ''The rule differs as to an inference which can be drawn only from facts proved. Where evidence is offered controverting the inference which might ordinarily be drawn under the circumstances, the jury is bound to find according to the controverting evidence. The distinction is found in the code. Section 1958 of the Code of Civil Procedure defines an inference as 'a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect.' ''

In *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 Pac. 269], it is ruled: ''A fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case.'' In that case the court cited numerous authorities and quoted the following from *Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514, 529 [39 Pac. 922, 925]: ''Disputable inferences or presumptions, while evidence, are evidence the weakest and least satisfactory. They are allowed to stand, not against the facts they represent, but in lieu of proof of them. The fact being proven contrary to the presumption, no conflict arises; the presumption is simply overcome and dispelled.'' See, also, *Ransford* v. *Ainsworth,* 196 Cal. 279 [237 Pac. 747, 750], where the court, referring to this same subject, said that ''the difficulty with the appellant's contention lies, not with the law, but with its application to the facts of the particular case.''

[6] There is, however, another reason why the finding to which reference has been had should not be permitted to stand so as to form the basis for a refusal on the part of the respondent Commission to make its award in favor of petitioner.

It will be remembered that, in addition to that part of the finding relating to the sufficiency of the evidence to establish the fact that Landsrath and petitioner were husband and wife, the finding also declares that "the evidence is insufficient to establish as a fact that the applicant Pauline Landsrath was dependent upon the employee, . . . " As heretofore pointed out herein, by the terms of the statute (sec. 14) a wife is conclusively presumed to be dependent "upon a husband with whom she was living at the time of his death, . . . " But independently of such provision, it is laid down in the case of *Temescal Rock Co.* v. *Industrial Acc. Com.*, 180 Cal. 637 [13 A. L. R. 683, 182 Pac. 447], that "if the applicant is a member of the family or household of the employee in good faith, compensation may be awarded, although he or she may not bear any relation by adoption, blood, or marriage to the employee." In that case an award was allowed to a woman who in good faith believed that she was married to a man with whom she had been living and cohabiting, although no marriage ceremony between them had been performed. The evidence in the instant case is uncontradicted and establishes beyond question that petitioner and Landsrath lived and cohabited together as husband and wife; that they deported themselves as such; that they were so recognized by their neighbors, friends, and relatives; and that at all times during which petitioner and Landsrath so lived and cohabited together petitioner in good faith believed herself to be the wife of said Landsrath. The finding of the Commission, therefore, is unsupported by the evidence and cannot stand.

It is ordered that the award of the Commission be and it is annulled.

Conrey, P. J., and York, J., concurred.