[Civ. No. 4308. Third Appellate District.—September 24, 1931.]

WINIFRED CLEVELAND et al., Respondents, v. KATY PETRUSICH, Appellant.

Jeremiah J. Sullivan for Appellant.

Goldman & Lieberman for Respondents.

PLUMMER, J.—On or about the hour of 10 o'clock P. M., on the thirtieth day of August, 1927, an automobile, driven by the defendant, collided with, ran over and seriously injured the plaintiff Winifred Cleveland. In this action the plaintiffs had judgment against the defendant for damages on account of the injuries sustained. From this judgment the defendant appeals.

The record shows that on the evening of the day mentioned the plaintiff, in company with a friend, was walking southerly on the east crosswalk of Main Street in the city of Los Angeles, across Sixth Street; that the defendant was driving an automobile northerly on Main Street, and upon reaching the intersection of Main Street with Sixth Street, made a right-angle turn on to Sixth Street for the purpose of driving easterly thereon, and upon making said turn, ran down and injured the plaintiff Winifred Cleveland. No contention is made that the damages awarded by the jury are excessive. Such a contention would, in view of the injuries inflicted upon said plaintiff, be wholly without merit, as the record shows that said plaintiff was not only severely, but also, in all probability, permanently injured. These facts are necessary to be borne in mind in order to arrive at a just conclusion in the consideration of some of the questions tendered for our solution.

Upon this appeal the appellant contends that the record shows contributory negligence on the part of the plaintiff Winifred Cleveland, as a matter of law; that plaintiff's counsel was guilty of prejudicial conduct in the propounding of certain questions during the course of the trial; and finally, that the court erred in its instructions to the

jury. ■ The testimony of the plaintiff, and also of the friend with whom she was walking, is to the effect that just before they entered upon the crosswalk on the east side of Main Street, leading over Sixth Street, they looked and saw no automobile, and proceeded across the street, and did not perceive the approach of the automobile driven by the defendant until it was actually upon them. The contention of the appellant is that if the plaintiff Winifred Cleveland had looked, she would have seen the approach of the automobile driven by the defendant. A number of cases are cited by the appellant relating to the duty of pedestrians when about to cross a street, to look in the direction from which danger may be apprehended. The cases cited correctly state the law as to the circumstances presented in each case cited by appellant, but their applicability to the circumstances here presented is a different matter. We are here dealing with the case where an automobile driver changes his course under conditions of which the plaintiff or the person injured may be wholly unaware. In other words, the record in this case shows that had plaintiff Winifred Cleveland and her friend looked toward automobiles approaching on the east side of Main street driving northerly, neither Winifred Cleveland nor her friend could have ascertained or derived any information leading them to conclude that the driver of such automobile would turn easterly upon the intersection of Sixth Street and run them down. ■ That the defendant was guilty of negligence is clearly established by her own testimony, as the following excerpt therefrom will show: "I was going north on Main Street, and when I got to Sixth Street, I turned to the right; when I got to Sixth Street I stopped; the bell been ring before I did go, when I come to Sixth and Main; I mean the signal that directs traffic on Sixth and Main, rang to stop; all the traffic going north stopped; I stopped; I stopped until the second bell did ring for me to go; I started; another car was ahead of me; I was about 10 feet back on Main Street from Sixth; then when I turn I put out my hand, of my going to turn; I put out my hand as soon as I started my car; then I saw those two women coming from—before I started—two women coming and more people behind them, and they stopped when they saw my hand out; I had my hand up for a right-angle turn, and the women didn't look down, didn't

look where they were going; they were looking down; I saw the two women before I started; the two women were walking with their heads down; they were walking straight ahead; then I struck them; I turned when I put out my hand, and then I looked to the other side of the street; I had to look on my wheel which way I turn, and I looked at my wheel not to hit anybody in front of me, and when I looked I still had my hand out, I held out my hand to turn, and when I kept turning, Mrs. Cleveland already hollered and the other woman hollered, and I cannot—and I tried to turn to the curb not to hurt her, and she didn't look at me, bumped right off my bumper. Question: Now, after you first saw these two ladies with their heads down, what did you do? Just looked to your wheel and kept right on going, is that right? Answer: I looked; there been a one the other side of the street where they started; they looked down and I thought they saw me, and the other people stopped their going to stop, too, and I coming just to turn, and I kept my hands up and I tried—I seen them up too near to me; I just tried to switch to the curb to miss them, you know, not to hit them, and it was impossible to swing so quick. Question: You say you first saw them just before you started, when the second bell told you to go ahead? Answer: I saw them before that. Question: You saw them before that? Answer: Yes; just leaving their side of Sixth Street, they stepped off the north curb line of Sixth Street.'' This testimony shows that the defendant saw the plaintiff Winifred Cleveland and her friend on the crosswalk over Sixth Street, where they had a legal right to be, and that the defendant made no attempt whatever to stop her car to avoid hitting them; no signal was given, no horn was sounded that could reasonably be calculated to apprise the plaintiff Winifred Cleveland and her friend of the impending danger. Her own testimony shows that the signal which she gave by raising her hand, and the situation of the car at the turn was such that the jury had a right to conclude that the hand signal was invisible to the plaintiff. ██ Assuming that the defendant did put up her hand, as stated by her, there is no pretense that she complied with section 130 of the California Vehicle Act. She began turning and then gave the arm signal. This is not complying with the

provisions of said section. (*Snyder* v. *Reeg*, 86 Cal. App. 231 [260 Pac. 600].)

The testimony of the defendant is further to the effect that she was just starting her car and driving very slowly. If this testimony is true, an application of the brakes would have prevented the accident. In connection with the testimony of the defendant as to the signals being given, we may here call attention to the testimony of the traffic officer who was on duty on the evening of the 30th of August, 1927, to the effect that the operation of the signals was discontinued at 9 o'clock P. M. by him, and the box locked where the controls are located. We may also call attention to the testimony of the disinterested witness John B. Burger, who testified as follows: "I am in the employ of the Southern California Telephone Company as a traffic officer. I witnessed the accident at the intersection of Main and Sixth Streets on August 30, 1927; it occurred at about 10 P. M. I was just returning from a meeting of the Southern California Display Manager's Association; I was driving east on Sixth Street; I was about the middle of the intersection of Main and Sixth Street, just about the center of the street. Mrs. Cleveland was about 10 feet from the south line of Sixth Street when she was hit. The signals were not operating at that time; I judge the automobile driven by the defendant was traveling between 10 and 15 miles per hour. I didn't hear any note of warning sounded by the defendant before the collision. There was nobody ahead of me between my car and the defendant's car. At the time of the impact someone screamed and the car lurched forward suddenly a distance of about 10 or 12 feet into the middle of the street, with this woman underneath the car. I had stopped; I had slowed down to allow the two ladies to cross the street; I believe there was a man just shortly behind them; I am not just positive of that, but I think there was a man just shortly behind them at that time, and the defendant's car came around the corner and made the turn; that is how I happened to notice them; there had been one or two pedestrians shortly in front of Mrs. Cleveland; I saw the defendant's car just as it started to make the turn; I observed Mrs. Cleveland and her friend justly walking naturally across the street; I noticed nothing about their conduct except that they were directly in front

of me. I had been driving down Sixth Street at about 15 miles per hour. The traffic signals absolutely were not working." From this testimony and the testimony of the officer having charge of the signal controls the jury was amply warranted in concluding that the testimony of the defendant that the control signals were operating was based upon assumption and not upon facts. Other witnesses testified that the defendant's car was traveling at a rate of between fifteen and twenty miles an hour.

While the injury involved in this case was inflicted upon the plaintiff Winifred Cleveland prior to the adoption by the legislature of section 131½ of the California Vehicle Act, which reads: "The driver of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at the end of a block," etc., the ignorance of motorists as to the rights of pedestrians or their carelessness or indifference as to such rights, led to the enactment. The circumstances of this case show that the principle involved in the section just quoted is applicable, as Mrs. Cleveland and her friend were, as stated herein, where they had a legal right to be, and where, under the circumstances, they had the right of way. The defendant turned from the street upon which she was traveling, to cross the intersection already occupied not only by Mrs. Cleveland and her friend but by other people, and as the testimony of the witness Burger shows, he had stopped to allow them to cross the street in perfect safety, as they were there prior to the time when automobile drivers would be entitled to use or pass over the crosswalk. This is not a case of a pedestrian suddenly stepping in front of a moving automobile, and all the cases cited by appellant where such circumstances appear are wholly inapplicable. The dangerous condition created by the defendant in turning upon a crosswalk already occupied by pedestrians, imposed upon her an added duty commensurate with the added perils so created, and the law with regard to reciprocal rights of motorists and pedestrians must be applied, in the light of the increased dangerous situation caused by the defendant changing the course of her automobile. We agree with the law as set forth in 3 California Jurisprudence, 871, relative to such rights, where it is said: "Persons alighting upon or walking across

public streets where vehicles are constantly traveling to and fro must use ordinary care to see that they do not run into or are not run over by vehicles; and in turn it is the duty of the drivers of vehicles to exercise ordinary care to prevent any injury being caused to such foot-passengers. It has been stated as the settled rule that the requirements as to the conduct of both the pedestrian and the driver of a vehicle are reciprocal and equal, and that neither has any right of way superior to the other. But while both parties are charged with the same degree of care, the amount of care exacted of the driver of a motor vehicle is far greater than the amount of care exacted of the foot-passenger. The degree of care exacted of both users of the highway is the same; the amount of care must of necessity vary in order that the degree may not. The driver of a motor vehicle—a dangerous instrumentality capable of inflicting fatal injuries—is charged with a greater amount of care than the pedestrian, in order that he may be bound to the same standard of ordinary care.'' Laying aside what we have said as to the right of the pedestrian being superior to that of a motorist by reason of being first to occupy the intersection, and not basing anything we are saying herein upon the amended section of the Vehicle Act which now gives the pedestrian the preferred right, the rule as stated in California Jurisprudence which we have just quoted shows that in order for the defendant in this case to have exercised the care and caution which she should have used, it was necessary for her to sound the siren on the car and give a notice of the turn that she was about to make intercepting the pedestrian traffic, and also, when she saw Mrs. Cleveland and her friend occupying the crosswalk, to immediately apply the brakes, shut off the gas and stop her car. There is no pretense in the record that she attempted any of these necessary acts to show a reasonable effort to avoid running down Mrs. Cleveland and her friend. We think that the rule of reason requires that when a motorist, at 10 o'clock at night, changes the course of his automobile and attempts to pass over a crosswalk occupied by pedestrians, that the siren of the car should be sounded or some audible signal given of the fact that the course of travel is about to be changed. Section 95 of the California Vehicle Act requires all automobiles to be equipped with a siren capable of giving a signal that

can be heard for a distance of at least two hundred feet. In this particular we think what this court said in the case of *Devecchio* v. *Ricketts,* 66 Cal. App. 334 [226 Pac. 11], applicable: "A person lawfully on a public highway may rely upon the exercise of reasonable care by drivers of vehicles to avoid injury, and failure to anticipate omission of such care does not render him negligent, and a pedestrian is not bound as a matter of law to be continuously looking or listening to ascertain if automobiles or other vehicles are approaching, under penalty that if he fails to do so and is injured, his own negligence will defeat recovery of damages sustained." And further, as said in that case: "The rule of reasonable precaution which the law enjoins upon a driver of an automobile upon a public highway includes the necessity of making certain that foot-passengers are aware of the rearward approach of the vehicle; that the vehicle itself is at such a distance from the pedestrian as to avoid running over him in his sudden panic from surprise at knowledge of its unexpected approach; and finally, that the vehicle is under such control as that it may be stopped promptly." We think the same rule as to giving some audible notice by the sounding of the siren, applies here, just as the rule was stated by the Supreme Court, speaking through Mr. Justice Preston, in the case of *Berguin* v. *Pacific Elec. Ry. Co.,* 203 Cal. 116 [263 Pac. 220, 224], when dealing with the failure of a motorman to give audible warning of the approach of a street-car when following an automobile, to wit: "This being true, his testimony to look ahead and not behind would have demanded of the motorman the ringing of the bell, or the use of some other method of attracting attention of said plaintiff before coming into collision with him."

The record in this case shows that after the collision had occurred, the automobile was stopped by a man, who was riding with the defendant, applying the emergency brake. This witness testified that he did not see the women until the instant of the impact; that he was looking in some other direction. From what we have said we think it clear that the rule set forth in the case of *Lord* v. *Stacy,* 68 Cal. App. 517 [229 Pac. 874], is not controlling here, the circumstances of that case showing that the plaintiff stepped into the street immediately in front of an automobile and did

not look in the direction from which danger might have been apprehended, or that if she had looked she would have seen. The court then said: "It is the duty of a person about to cross a city street, immediately before placing himself in a position of danger, to look in the direction from which danger is anticipated; and that it has been repeatedly so held." (Citing a number of cases which we find on page 522 of the volume just cited.) A pedestrian crossing Sixth Street, walking southerly, could not anticipate that a motor vehicle being driven northerly on a different street, to wit, Main Street, would turn in upon Sixth Street without giving some audible signal at that time of night to warn pedestrians of the impending peril. The cases cited by the appellant relate to a straightaway course of an automobile and not to instances where the automobile makes a right-hand turn without audible warning.

■ The conduct alleged as prejudicial refers to the following testimony given by the witness C. J. Cleveland: "Q. By Mr. Goldman: Did you ever have any conversation with the defendant, Mrs. Petrusich, with regard to this accident? A. I did. Q. What and when and where and who were present? A. Well, Mrs. Petrusich, and there might have been one of her little girls there. Q. Speak up, please. A. I saw Mrs. Petrusich. Q. Yes. A. Perhaps one of the little girls was around. Q. Where was this conversation had? A. At her home. Q. About when? A. It was shortly after the accident occurred. That is, a few days after, inside of a week. Q. What did she say and what did you say? A. I asked Mrs. Petrusich if she felt that she wanted to help me in any way; she said that she was protected by the insurance company. Q. By Mr. Goldman: What else? A. And that I— Mr. Perkins: (interposing) Now, just a minute, if the court please— The Court: Just a minute now. Mr. Perkins: Now, if the court please— The Court: (interposing) I thought you were going to introduce certain admissions and so on. Strike the answer out. The jury is instructed to disregard the answer to the question." While we think the course of respondent's counsel in interrogating this witness, which elicited the answer complained of, should have been much more guarded, and that the circumstance of the statement that the defendant was protected by insurance, is not necessarily or inextricably con-

nected with any of the facts sought to be elicited, yet in view of the testimony which we have been reviewing in this case, we feel that the holding of this court in the case of *Rowe* v. *Rennick,* 112 Cal. App. 576 [297 Pac. 603], is controlling. We there said, after a rather careful analysis of a long list of cases dealing with the issues here presented: "A number of other cases cited by counsel for respondent might be reviewed, showing that where the fact of insurance is disclosed in an answer, coupled with an acknowledgment of liability, prejudicial error cannot be assigned, but the authorities which we have heretofore cited we think sufficient to establish the following rules: First, that where the answer disclosing the insurance is inextricably coupled with an acknowledgment of liability, the answer is admissible; second, that where it appears from the testimony in the record that no verdict could have been rendered for the defendant, the admission of testimony relative to insurance is not alone sufficient to authorize a reversal of the judgment. It must further appear that the judgment returned was the result of passion or prejudice. This involves the third assignment of error, to-wit, that the verdict is excessive." There is no assignment of error in the instant case raising issue as to the excessiveness of the verdict. Nor is this a case where the testimony is evenly balanced. This court, in the case of *Squires* v. *Riffe,* (Cal. App.) 287 Pac. 360, in an opinion prepared by Mr. Justice Finch, and adopted by the Supreme Court upon hearing therein had, 211 Cal. 370 [295 Pac. 517], held that such error is not sufficient to justify a reversal unless the testimony is evenly balanced. The counter-statement is necessarily true that where the testimony is not evenly balanced, and where the facts show that the jury could not reasonably have arrived at any other verdict, the error in disclosing the fact that the defendant is insured is not, in and of itself, sufficient to justify a reversal, and especially is this true when there is no contention that the verdict is excessive, and as we have said, the record in this case shows that such contention could not be reasonably made with any hope of success. Under such circumstances we think that section 4½ of article VI of the state Constitution applies.

It is next insisted that prejudicial error was committed by the court in reading to the jury the following

portion of an instruction: "You are instructed that it is not the law that a pedestrian must refrain from crossing a public street intersection in the business section of the city of Los Angeles until such street is free from traffic and obstructions, and that there is no positive duty upon the part of a pedestrian about to cross a street, to stop, look and listen; that the question of negligence is a question to be determined by the jury, under the rule of ordinary care, that devolves upon pedestrians crossing the street, in the light of all the attending circumstances and evidence in the case." There is sufficient testimony in the record to warrant the jury in coming to the conclusion that Mrs. Cleveland and her companion did stop and look in the direction from which danger might be apprehended. The respondent also cites some authorities supporting this instruction. ■ However, as the record fails absolutely to show upon whose behalf or request this portion of the instruction was given to the jury, the appellant is not in a position to complain, and we are not called upon to enter into an analysis of the cases to ascertain whether the instruction is or is not technically correct. In view of the testimony showing that the two pedestrians involved did look, the giving of an instruction could work no prejudicial error. However, the law is pretty well settled that when the giving of an instruction is assigned as error, the record must show at whose request the instruction was given, or that it was given by the court of its own motion. The law as to what the record must show is thus stated in 2 California Jurisprudence, 870: "If the record does not show at whose request the instructions are given, it will be presumed that they were requested by the appellant who claims them to be erroneous, and likewise, where there is a failure to give an instruction, and the record does not show a request therefor, it will be presumed that no request was made." (See, also, 24 Cal. Jur. 871; *Shannon* v. *Calmus,* 70 Cal. App. 652 [234 Pac. 107], where it is said: "The record does not show at whose request the instructions were given, and the presumption, therefore, is that they were given at the appellant's request." (Citing *Gray* v. *Eschen,* 125 Cal. 1 [57 Pac. 664]; *Sutter-Butte Co.* v. *American R. & A. Co.,* 182 Cal. 549 [189 Pac. 277].) Under these circumstances we do not feel called upon to express any opinion as to the correctness or incor-

rectness of the challenged portion of the instructions given to the jury. We may state, however, that the whole charge given by the court to the jury has been considered, and we find it exceptionally clear and direct as to all the issues involved.

The judgment is affirmed.

Preston P. J., and Thompson (R. L.), J., concurred.