[Civ. No. 10141. First Appellate District, Division One.—February 3, 1937.]

MILIVOJ P. CURCIC, Respondent, v. NELSON DISPLAY CO. (a Copartnership) et al., Appellants.

Barry J. Colding, Theodore Hale, and Carroll B. Crawford for Appellants.

Glensor, Clewe, Schofield & Van Dine for Respondent.

BRAY, J., *pro tem.* — Plaintiff was struck and injured while crossing California Street at Polk by an automobile driven by defendant Brunsen. He brought this action for damages against Brunsen and the other defendants both individually and as a copartnership known as the Nelson Display Co., the company for which Brunsen was working at the time of the accident. The case was tried by the court sitting with a jury. At the conclusion of the trial the court directed a verdict in plaintiff's favor on all issues except the question of damages, which was left for the jury to decide. It assessed the damages at $2,500, and from the judgment thereon all defendants appeal.

As ground for reversal, appellants urge, first, that Brunsen was not an employee of the other defendants (referred to herein for brevity as Nelson Display Co.), but was an independent contractor, and secondly, assuming that he was an employee, he was not acting within the scope of his employment at the time of the accident, and therefore the court erred in denying defendants' motion for a nonsuit, for a directed verdict in their favor, and in directing the verdict against them. The facts as to Brunsen's connection with the Nelson Display Co. are without dispute. He trimmed windows for the customers of the Nelson Display Co., on both sides of the bay, at 90 cents per window. He had to provide his own transportation in going to and from his work and from job to job, and at the time of the accident he was driving his own car. His time was at his own disposal, that is, he worked by assignment and did his work on his own time except that the work must be done upon the particular day assigned. When he was through with his assignments he was free for the remainder of the day. He received no compensation for the use of his automobile; but the company deducted from his commissions for public liability blanket insurance thereon. The company solicited the contracts with the stores and fixed the amount charged. Brunsen received from the company assignments to the particular stores and instructions as to the method of making the installations, and used the material and made the trims in the manner directed by the manager of the company. At the time of the accident

he was returning from Alameda, where he had been trimming a window, and went to the office of the company to report that he had had to use crepe paper in the trim in contradiction of orders, but finding the office closed, he then decided to visit the manager at his home on California Street to report his deviation from orders. It was on his way there that he struck plaintiff. It was necessary for the trimmers to make written reports daily as to their work, but these reports could be mailed in. Frequently they were brought in personally by the trimmers.

It was customary for Brunsen to stop at the manager's house occasionally and discuss various matters. It was important for the manager to have immediate knowledge of any unusual circumstances in a particular trim so that he would be in a position to explain the reason therefor in the event that a client should inquire or complain. While there was no particular necessity for Brunsen to go to the manager's house that particular evening to inform him that he had deviated from his orders as the report could have waited until the next morning, still Brunsen apparently believed it to his employer's interests to make an immediate report that evening and he went to Ryan's home for that purpose, as he had occasionally done in the past.

The two most important questions are first whether the defendant Brunsen was an employee of the Nelson Display Co., and secondly, if so, whether or not in going to the manager's home to report the deviation from his orders the defendant Brunsen was acting within the scope of his employment.

Inasmuch as the lower court took away from the jury the right to pass upon these questions and affirmatively found that the defendant Brunsen was an employee of the Nelson Display Co. and was acting within the scope of his employment at the time of the accident, it becomes necessary now to determine not only whether the evidence sustains the finding of the trial court, but as to whether or not there was any evidence to the contrary or whether any contrary conclusion can reasonably be deduced from the evidence.

"The Court has the right to direct a verdict only when, disregarding conflicting evidence and giving opposing evidence all the value to which it is legally entitled, indulging

in every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality which would support a verdict contrary to the one directed, if given." (*California Packing Corp.* v. *Lopez*, 207 Cal. 600 [279 Pac. 664, 64 A. L. R. 1412].)

In this case there is no evidence of sufficient substantiality which would support a verdict contrary to the finding that the defendant was an employee rather than an independent contractor. "The real test is to ascertain whether the employee was subject to the employer's orders and control and was liable to be discharged for disobedience or misconduct; and the fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it." (*May* v. *Farrell*, 94 Cal. App. 703, 710 [271 Pac. 789].)

"An independent contractor is one who in rendering service exercises an independent employment or occupation, and represents his employer only as to the results of his work and not as to the means whereby it is to be accomplished." (*May* v. *Farrell*, *supra*, p. 709.)

"And when the essential object of the employment is the performance of the work the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the work shall be done." (*May* v. *Farrell*, *supra*, p. 710.)

Applying these tests there can be no question but that the defendant Brunsen was subject to the Nelson Display Co.'s orders and control, was liable to be discharged for disobedience or misconduct, and that the defendant Brunsen represented the Nelson Display Co. not only as to the results of the work but also as to the means whereby it was accomplished. The Nelson Display Co. assigned him to his work, instructed him as to the method of making the installations, provided the materials for the trims, and required him to make the trims in the manner directed by the manager. Subject to the freedom of action inherent in the employment, the right to direct the manner of performance was reserved by the Nelson Display Co. Moreover, it had the right to discharge Brunsen at any time. "It has been held that evidence that the employer might terminate the employment at any time tended to negative the independence of the employee."

(*George* v. *Chaplin*, 99 Cal. App. 709, 712 [279 Pac. 485].) As held in *Easton* v. *Industrial Acc. Com.*, 34 Cal. App. 321, at page 328 [167 Pac. 288], the fact that Brunsen chose his own time to go out and return is not conclusive of the relationship which actually existed, nor is it inconsistent with the claim that the relation was that of employer and employee. This relationship exists ''whenever the employer retains the right to direct the manner in which the business shall be done as well as the result to be accomplished, or in other words not only what shall be done but how it shall be done.'' (*Dillon* v. *Prudential Ins. Co.*, 75 Cal. App. 266, 272 [242 Pac. 736].) The evidence in the case at bar shows conclusively that the Nelson Display Co. not only directed Brunsen as to ''what shall be done but how it shall be done''.

The fact that the defendant Brunsen was paid upon a commission or piece work basis is not a true test of the nature of the relationship. As said in *May* v. *Farrell, supra,* at page 711, ''The mode of payment is an element which has some bearing upon the question whether the person employed was an independent contractor, but it does not afford a decisive test of the nature of his relationship to the employer.''

As said in *Easton* v. *Industrial Acc. Com., supra,* at page 328, ''The fact of compensation being fixed by the amount of the goods or lots sold did not in itself create the relationship of independent contractor.'' To the same effect, *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 581 [250 Pac. 570]; *Cameron* v. *Pillsbury*, 173 Cal. 83, 85 [159 Pac. 149].

''The fact that the salesman furnished his own transportation did not affect his status as an employee.'' (*May* v. *Farrell, supra,* at p. 711; *Cook* v. *Sanger*, 110 Cal. App. 90, 102 [293 Pac. 794]; *George* v. *Chaplin, supra,* at p. 712; *Ryan* v. *Farrell*, 208 Cal. 200 [280 Pac. 945].)

Appellants contend that there is a general rule that an employee cannot involve an employer in liability for the negligent operation of an automobile by the former in moving from one place to another at the request of his foreman where the auto is the employee's own, registered in his own name, used for his own personal convenience in going from one place of work to another, the expense of upkeep of the car not being borne by the employer, and the employer not having power of control over the route, speed, or method of operation of the car and paying the employee no compensation for the use

of the car, and to support this alleged general rule quotes from 87 A. L. R. 789. ▮ That this is not the general rule is set forth in *Wesolowski* v. *John Hancock Mut. Life Ins. Co.*, 308 Pa. 117 [162 Atl. 166, 87 A. L. R. 787], where it is set forth that the general rule is that if the activity in which the agent was engaged at the time of the tort complained of was within the scope of his employment, the fact that the automobile used by him and which caused the injury, belonged to the agent, will not preclude the person injured in recovering from the employer, if the agent's use of the vehicle was, either expressly or impliedly, authorized by the employer. This is also the rule in California. (*Ryan* v. *Farrell, supra; Brown* v. *Montgomery Ward & Co., Inc.*, 104 Cal. App. 679 [286 Pac. 474]; *Cook* v. *Sanger, supra*, at p. 99; *Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 122 [210 Pac. 820].)

The facts of the case at bar bring it within the rule holding the relationship to be that of employer and employee as established by the cases herein cited and other cases where the facts are somewhat similar, such as *Pearson* v. *M. M. Potter Co.*, 10 Cal. App. 245 [101 Pac. 681], and *Hillen* v. *Industrial Acc. Com., supra; Press Pub. Co.* v. *Industrial Acc. Com., supra.*

This brings us, then, to the second question: ▮ Was there any evidence from which it could reasonably be deduced that Brunsen was not acting within the scope of his employment? There is no dispute that Brunsen, apparently believing it to be for the best interests of his employer, was at the time of the accident on the way to report to the manager his deviation from orders. He was under instructions to report such deviations immediately and although the manager testified that this meant to report to him at the office, the evidence is clear that a custom had arisen by which Brunsen, as well as other trimmers, had reported to the manager away from the office, and Brunsen himself had on other occasions reported to the manager's home, even spending the night there. There is not one iota of evidence in the case that in going to the manager's home this particular night, Brunsen was going for any purpose of his own or for any purpose other than to report, in accordance with his instructions, as soon as possible, a deviation from his orders. While it is true that the report could have waited until morning, neverthe-

less, Brunsen was acting as he believed for his employer's best interests and as he had on occasions theretofore done in the past. Under these circumstances there can be only one reasonable conclusion drawn from the evidence, and that is that Brunsen was acting in the scope of his employment. There being no dispute in the evidence, and only one reasonable conclusion to be deducted therefrom, it was a question of law for the court and not a question for the jury. Appellants rely principally upon the cases of *Humphry* v. *Safeway Stores Inc.*, 4 Cal. App. (2d) 589 [41 Pac. (2d) 208], and *Nussbaum* v. *Traung Label & Lithograph Co.*, 46 Cal. App. 561 [189 Pac. 728]. The facts in these cases are not in point, and the principle upon which these cases are decided is the same principle as set forth in what are known as the "going and coming" cases which hold that an employer is not liable for the negligence of an employee in going to and coming from work. In the Humphry case, *supra,* the employee, who was supposed to mail his daily report but who had evolved the custom of dropping his report each night in the mail chute of the main store, did not do so on this occasion as he desired to attend a lodge meeting, and then the next morning drove with the report to the place of deposit instead of going directly to the store where he worked. This action of the employee was not for the benefit of his employer but merely for his own convenience. Moreover, the court held that the deposit of the report at the main office was a mere incident of the journey to and from work. In the case at bar it cannot be said that Brunsen's act in reporting to the manager was a mere incident of his automobile trip. It was the entire purpose of and occasion for, the particular trip. In the Nussbaum case, *supra,* the employee was evidently on his way to breakfast, and the court properly held that he was not thus engaged in the performance of any act having any connection either directly or indirectly with the duties required of him by his employer. The Nussbaum case, *supra*, page 565, holds: The test of liability in all cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred, or fairly implied from the nature of the employment and the duties incident to it; and, in determining the question of authority, we are to regard the object, purpose and end of the employment." Having in mind the object, purpose and end of Brunsen's employment and his

procedure in the past, it must be said that his reporting to the manager that night was an act fairly implied from the nature of the employment and the duties incident to it. The Nussbaum case, *supra,* sets up a good test to be applied to the facts of this case, it being borne in mind that each case is different and depends upon its particular facts. This test is: ''Was he [the employee] engaged in some act or the execution of some purpose which, while not of the actual duties of his employment, was an incident to his duties as an employee?'' Under the facts of this case there can only be one answer and that is that his reporting to the manager that night, if not one of the actual duties of his employment was certainly an incident to his duty as an employee. The cases of *Mauchle* v. *Panama Pacific International Exp. Co.,* 37 Cal. App. 715 [174 Pac. 400], *Kish* v. *California State Automobile Assn.,* 190 Cal. 246 [212 Pac. 27, 28], and other cases cited by appellant, are all cases where the evidence showed that the employee was not in any way serving the employer at the time of the act and was either going to or coming from work or engaged in matters for his own convenience or ends. In *Kish* v. *California State Automobile Assn., supra,* it is held, ''If the act is for the benefit of the employer, either directly or incidentally, the act is within the general scope of the servant's employment, but if the act performed is not in any way connected with the service for which he is employed, but for his own particular and peculiar purpose, then the act is not within the scope of the employment.'' Applying this test, there can be no doubt that the defendant Brunsen was acting both directly and incidentally for the benefit of his employer, in going to the manager's home to report his violation of his instructions so that the employer would know the situation and reasons therefor, in the event that the employer's client complained either that night or the first thing in the morning.

Appellants further contend that the lower court committed prejudicial error in withdrawing from the jury the issue of negligence of the defendant Brunsen in running into the plaintiff. However, they do not discuss this in their briefs and there is not one iota of evidence in the case which would justify a jury finding that the defendant Brunsen was not negligent. Moreover the facts are very similar to those in *Cleveland* v. *Petrusich,* 117 Cal. App. 71 [3 Pac. (2d) 384], upholding a verdict of negligence.

■ Appellants also urge that the trial court erred in taking from the jury the question of plaintiff's contributory negligence. Brunsen testified that he was making a left-hand turn from Polk Street into California, and that he did not see plaintiff until he struck him; that plaintiff was then in the pedestrian lane. Plaintiff testified that he looked before he started to cross the street; that he was in the pedestrian lane; that he saw Brunsen when he was 8 or 10 feet away. No witness testified that the plaintiff was not in the crosswalk at the time of the collision and appellants' only point in this behalf is that because a witness testified that the car came to rest within the pedestrian lane and there was evidence from other witnesses that the automobile had moved a few feet after it struck plaintiff that this raised an inference that the plaintiff might have been walking outside of the marked lane at the time he was hit. Appellants contend that this alleged inference made a conflict in the evidence upon the question of plaintiff's contributory negligence and should have gone to the jury. Actually, however, there is no conflict, plaintiff, Brunsen and an impartial bystander having testified that plaintiff was in the pedestrian lane when struck. Under the provisions of a city ordinance the pedestrian being in the marked crosswalk had the right of way, and it was the duty of the driver of the automobile to yield to him such right of way. In view of the positive evidence, the involved inference which appellants attempt to draw would not be proper and could not sustain a verdict based thereon. "A mere inference will not always be enough to create a conflict in the evidence . . . ' . . . inferences are allowed to stand, not against the facts they represent, but only in lieu of proof of such facts, and where the facts are proven to be contrary thereto, no conflict arises and the finding of the jury in accordance with such inference cannot be supported thereby.' " (*Landsrath* v. *Industrial Acc. Com.*, 77 Cal. App. 509 [247 Pac. 227]; *Maupin* v. *Solomon*, 41 Cal. App. 323 [183 Pac. 198].) At its best this alleged inference does not raise a substantial conflict.

"The situation of a case which will authorize a trial judge to direct that a verdict be returned for the plaintiff or defendant has been defined many times in decisions of the supreme court of this and other states, for the rule is practically the same throughout the country. Briefly stated, such

a direction is not authorized where there is a conflict in the evidence of a substantial kind. A bare conflict, created by what is sometimes termed a 'scintilla' of evidence, is not substantial within the interpretation of the decisions. The rule is precisely the same as that applied where a motion for judgment of nonsuit is under consideration. On such a motion it must appear that the evidence utterly fails as to essentials necessary to be proved before an order granting the same will be allowed to stand." (*Kohn* v. *National Film Corp.*, 60 Cal. App. 112, 116 [212 Pac. 207].)

Appellants contend that the question of the relationship between Brunsen and the Nelson Display Co., the scope of his employment, the negligence of Brunsen and the alleged contributory negligence of plaintiff were all matters for the jury and not for the court. As heretofore pointed out, on all of these questions there was no conflict in the evidence, or in the conclusions to be drawn therefrom. Under these circumstances they become questions of law for the court alone. (*Humphry* v. *Safeway Stores Inc.*, *supra; Houghton* v. *Loma Prieta Lumber Co.*, 152 Cal. 574 [93 Pac. 377, 14 Ann. Cas. 1159, 14 L. R. A. (N. S.) 913].) In the cases cited by appellants on this point such as *Majors* v. *Connor*, 162 Cal. 131 [121 Pac. 371], there was a conflict of evidence—but the cases themselves uphold the foregoing rule where there is no conflict in the evidence.

Appellants finally urge as ground for reversal that the court erred in refusing to grant a mistrial upon the grounds that plaintiff's counsel had knowingly over appellants' objection, brought out the fact that the Nelson Display Co. deducted a certain amount from the commissions of the defendant Brunsen, and other employees, for the purpose of assisting the Nelson Display Co. in buying blanket insurance. (Incidentally, this evidence was not brought out by respondent's counsel, but by the court.) Appellants contend that this was prejudicial as bringing before the jury the fact that the Nelson Display Co. was insured and cite a number of cases such as *Squires* v. *Riffe,* 211 Cal. 370 [295 Pac. 517], and others, which hold that it is misconduct in a personal injury case to show that the defendant is insured. The rule in this behalf is well stated in 56 A. L. R., at page 1432: "The general rules and principles applicable to the question of the admissibility of evidence, in a negligence ac-

tion, of the fact that the defendant therein carries liability or indemnity insurance protecting him from the consequences of negligence, are settled beyond dispute, but, like most other rules of evidence, they are subject to qualifications and exceptions. It may be stated that it is not open to question that liability insurance may be the subject of evidence, or the object of interrogations, if the fact of insurance bears upon an issue in the case, though such question is ordinarily inadmissible. In other words, it is competent to show that defendant carries liability insurance, where to do so tends to prove some material issue properly in the case; under such circumstances, the mere fact that it is not admissible to prove another matter does not render it incompetent; the determination of the admissibility of any evidence depends upon whether it tends to prove an issue—whether it is relevant or material; if it is, it cannot be excluded on the ground that it may tend to prejudice the defendant because it tends to show that he carried liability insurance.'' That this is the rule in California is established by a number of cases including *Cleveland* v. *Petrusich, supra,* at page 81; *Langford* v. *Kosterlitz,* 107 Cal. App. 175, 184 [290 Pac. 80].

''If the existence of the relation of master and servant is an issue in an action for damages for personal injuries by one claiming to be an employee of defendant, it is competent for the plaintiff to show that the defendant carries indemnity insurance on his employees, including the plaintiff, as that evidence is relevant to the issue of *respondeat superior.''* (56 A. L. R., p. 1433.) The evidence therefore was competent and admissible as bearing upon the question of the relationship that existed between the Nelson Display Co. and the defendant Brunsen, even though it brought before the jury the fact that the defendants were insured, which fact itself, apart from its bearing upon the question of relationship, would not have been admissible.

Judgment affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 1, 1937.