## FREEMAN S. S. CO. et al. v. PILLSBURY.

### No. 11902.

United States Court of Appeals
Ninth Circuit.

Jan. 24, 1949.

Lasher B. Gallagher, of Los Angeles, Cal., for appellant.

H. G. Morison, Asst. Atty. Gen., James M. Carter, U. S. Atty., and Clyde C. Downing and Max F. Dentz, Asst. U. S. Attys., all of Los Angeles, Cal., and Alvin O. West, Atty. Dept. of Justice, of Washington, D. C. (Ward E. Boote, Chief Counsel, and Herbert P. Miller, Asst. Chief Counsel, Bureau of Employees' Compensation, Federal Security Agency, both of Washington, D. C., of counsel), for appellee.

Before STEPHENS, HEALY, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The deputy commissioner made an award in favor of claimant Cora E. Olcott, as the widow of Walter Olcott, under the authority of the Longshoremen's and Harbor Workers' Compensation Act, March 4, 1927, c. 509, § 1, 44 Stat. 1424, 33 U.S. C.A. § 901. The employer and its insurer brought a proceeding called a libel in district court for review, 33 U.S.C.A. 921(b), and thereafter the court entered a final decree denying any relief and dismissing the libel with costs. The employer and insurer appeal.

■ There are two points for decision in this appeal. One of them is whether the employer is entitled to a hearing de novo before the district court upon the issue of whether the awardee was the widow of the deceased employee and the other point is, was the proof before the commissioner sufficient to sustain a finding that the awardee was the wife of the employee. We agree with the district court that a trial de novo was not the right of the employer under the doctrine of the much criticized[1] case of Crowell v. Benson, 285 U.S. 22, 56, 52 S.Ct. 285, 76 L.Ed. 598. In the cited case, in the circumstance that Congress in enacting the Longshoremen's Act was acting under authority of Art. III, § 2(1) of the United States Constitution ("The judicial Power shall extend * * to all Cases of admiralty") the court held that the proof of facts necessary to bring a case within this constitutional provision to-wit, proof of work performed on United States navigable waters, was jurisdictional. It then held that since the Act provided that the employer-employee relationship between one petitioning under the Act and the one against whom an award was sought was an essential condition precedent to the right to make a claim, 285 U.S. at page 62, 52 S.Ct. at page 296, such relationship was also a jurisdictional question. The court in the cited case further held that due process was not accorded the alleged employer until, should he petition therefor, these

---

[1] See dissenting opinions in the cited case. See also dissenting opinion of Mr. Justice Frankfurter in City of Yonkers et al. v. United States et al., 320 U.S. 685, 64 S.Ct. 327, 88 L.Ed. 400, and concurring opinion in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. Also Cardillo etc. v. Liberty Mutual Ins. Co., 330 U.S. 469, 474, 67 S.Ct. 801, 91 L.Ed. 1028.

two questions were tried de novo by a United States court.

Whatever view the Supreme Court may take in the future as to the holdings just above described, we are strongly impressed with the view that the applicable law will not justify extending the doctrine to other questions necessarily arising in proceedings under the Act and the basic reasoning in the case is contrary to its extension. Therefore, we hold against appellant's contention that the question of the widowhood of the awardee herein is one as to which the district court should have granted a trial de novo.

■ Upon the other point there is ample evidence to support the finding that the deceased and awardee were husband and wife at the time of Walter Olcott's injury and death and had been such for eighteen years. There is creditable evidence that, after announcing their intention to their friends, they together went to Tijuana, Mexico, to get married. There they were given a document labeled in Spanish a "license". A marriage ceremony was performed for them at a place where people were being married and they returned to California and exhibited the document labeled license, told friends they were married, and lived together in that state continuously. There is evidence that a search of the marriage records of Tijuana failed to show any record of the marriage and a statement of one versed in Mexican law that there is but one place in Tijuana where people could be married.

At the hearing, the commissioner made the statement that he was not going to decide the issue upon whether the ceremony had been performed according to technical points such as might be considered on a petition for annulment. We do not consider such a statement as indicating that he was excluding competent evidence from admission in the case, nor as excluding it from his consideration.

The offer of proof which brought this statement from the commissioner was that the witness, a lawyer versed in Mexican law, would testify that "the laws in effect in August of 1926 [the month and year of the alleged marriage], as evidenced by the Civil Code, require that each party fill out and file an application, that they were required to give certain information about themselves, that they were required to be married by a judge of the Civil Registrar, that it was necessary in order to perform a valid marriage in Tijuana at that time that both parties must have present a witness who had known them for a period of three years, and that at the time the application is made and at the time the ceremony is performed the Judge of the Civil Registrar make a minute entry in the book for recording marriages at Tijuana, and that if those requirements were not complied with, the marriage never was performed."

In all probability, in making the statement referred to, the commissioner had reference to the Mexican law requirements as stated in the offer of proof. We take it, if the officials overlooked some of these details in the place where "people were being married" the legality of the marriage ceremony performed would not be affected.

The mere fact that a searcher did not find a record of the marriage together with the fact that after eighteen years the awardee could not find the "license" does not necessarily outweigh the other evidence.

■ We quote from Estate of Chandler, 113 Cal.App. 630, 633, 299 P. 110, 111: "* * * It seems to be settled in this state [California] that a party to a marriage may testify as to its solemnization. Section 57, Civ.Code; Estate of Richards, 133 Cal. 524, 65 P. 1034; Budd v. Morgan, 187 Cal. 741, 203 P. 754; Landsrath v. Industrial Acc. Comm., 77 Cal.App. 509, 247 P. 227. Under the circumstances here shown there is a strong presumption that this was a legal marriage. Subdivision 30, § 1963, Code Civ.Proc. In Wilcox v. Wilcox, 171 Cal. 770, 155 P. 95, 97, the court quotes with approval from Bishop on Marriage and Divorce, as follows: " 'Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality—not only casting the burden of proof on the

party objecting, but requiring him throughout, in every particular, to make plain, against the constant pressure of presumption, the truth of law and fact that it is illegal and void.'". See Estate of Crawford, 69 Cal.App.2d 609, 160 P.2d 65.

There is no clear error in the case.

Affirmed.