[Crim. No. 3072. In Bank.—April 13, 1928.]

THE PEOPLE, etc., Appellant, v. HENRY W. J. ELLIS, Respondent.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General for Appellant.

Russell F. O'Hara, Joseph M. Raines and Theodore W. Chester for Respondent.

PRESTON, J.—This record presents but two questions: (1) May the People appeal under the facts here shown? and (2) if they may so appeal, does the information state a public offense over which the court below had jurisdiction? As we have been led to the firm conclusion that both questions must be answered in the affirmative, they will be considered in the order stated.

On January 24, 1927, the district attorney of Solano County informed against the defendant, attempting to charge him with the offense of bigamy, using language here material as follows: "The said Henry W. J. Ellis . . . on or about the 27th day of September, A. D. nineteen hundred and twenty-six, at Kansas City, state of Missouri, and before the filing of this information, did knowingly, wilfully and feloniously marry one Ida Lou Johnson, the said defendant being then and there the lawful husband of another person, to-wit: Alice Burton Ellis, then and there living, the marriage of said defendant and said Alice Burton Ellis not having been annulled, . . . ; said defendant and said Ida Lou Johnson Ellis having on or about the 2nd day of October, 1926, and ever since said date cohabited together as husband and wife, in Vallejo township, in the county of Solano, state of California. . . . "

In due course the defendant was arraigned on said information and thereafter and on February 7, 1927, entered a plea of not guilty without having theretofore interposed a motion to set aside or a demurrer to the said information. The cause was then set for trial for March 29, 1927, and was thereafter regularly postponed with the consent of defendant until April 26, 1927. On the date last mentioned the cause was called for trial and a venire was present from which to select trial jurors. At this juncture and before the selection of the jury, defendant, through his counsel, asked that the venire be excused from the courtroom. This was done and thereupon counsel for defendant orally stated to the court that he objected to further proceedings in the cause upon the ground that the court had no jurisdiction over the offense charged and upon the further ground that the facts charged in the information did not constitute an offense punishable by law, and said counsel, upon the same grounds, moved for a discharge of the defendant. The

matter was argued and later, on April 28, 1927, the clerk's minutes recite the following as having occurred: "Counsel having presented their respective arguments and the matter having been submitted, the court now grants the motion of the defendant asking that defendant be discharged, and orders the defendant discharged and the court further orders that in the interest of justice the action be dismissed." The reporter's transcript also shows the following version of the proceedings had on the same day: "The Court: It is ordered that the objections of the defendant to the court proceeding. with the trial of the case be sustained, and it is further ordered that the motion of the defendant, asking that the defendant be discharged be, and the same is granted, and it is further ordered that the action be dismissed. Mr. Dobbins: And, your honor, also that we now give notice, at this time, of appeal." Mr. Dobbins was the district attorney and represented the People. There is no question made as to the regularity of the form of the appeal taken.

It thus appears that, before a jury was impaneled, the defendant moved for a dismissal of the action and for his discharge, asserting lack of jurisdiction over the offense and also that the information stated no public offense. It should be noted that at the time of this action the plea of defendant had not been formally withdrawn nor was the motion in writing. It should also be noted, however, that jeopardy had not yet attached. (*People* v. *Hawkins*, 127 Cal. 372 [59 Pac. 697]; *In re Harron*, 191 Cal. 457, 466 [217 Pac. 728]; *People* v. *Hinshaw*, 194 Cal. 1 [227 Pac. 156]; *Ex parte Wilson*, 196 Cal. 515 [238 Pac. 359]. Ordinarily an order dismissing a felony charge prior to the impaneling of the jury does not place the defendant in jeopardy. (*People* v. *Campbell*, 59 Cal. 243 [43 Am. Rep. 257]; *Ex parte Clarke*, 54 Cal. 412.)

Section 1238 of the Penal Code, as amended in 1897 (Stats. 1897, p. 195), gives to the People the right of appeal in the following cases: "(1) From an order setting aside the indictment or information; (2) from a judgment for the defendant on a demurrer to the indictment, accusation or information; (3) from an order granting a new trial; (4) from an order arresting judgment; (5) from an order made after judgment, affecting the substantial rights

of the people.'' The grounds upon which defendant moved the court for a dismissal of the action, are grounds of demurrer specified in section 1004 of the Penal Code, subdivisions 1 and 4. It is also to be noted that under section 1012 of the Penal Code, these two grounds of objection are not only proper grounds for demurrer but are not waived by a plea of not guilty and may be asserted at any ' time, even in arrest of judgment (*People* v. *Welton*, 190 Cal. 236, 238 [211 Pac. 802]).

The right of the district attorney to move for this dismissal of the cause in furtherance of justice or the right of the court to likewise act in furtherance of justice and to dismiss an action under section 1385 of the Penal Code is not here involved, for the reason that the motion was not made either by the district attorney or upon the court's own initiative, and furthermore, the reasons for the dismissal are not set forth in an order entered upon the minutes of the court. This section apparently confers no privilege upon the defendant. (*People* v. *Montgomery*, 36 Misc. Rep. 326 [73 N. Y. Supp. 535, 537].)

From the above situation it appears that if the defendant had demurred to the information upon the grounds later urged, the People would have had an appeal from the judgment made upon an order sustaining such demurrer. It is also true that, had the defendant been convicted and the motion here under consideration been made in arrest of judgment and granted, the People would have had the right of appeal. It is impossible to distinguish the present situation from a case where a demurrer has been interposed, sustained and a judgment rendered for the defendant before the entry of a plea of not guilty. In other words, the situation is the same as though the court had permitted withdrawal of the plea of not guilty and had also permitted an opportunity to demur, as provided in sections 1004 and 1005 of the Penal Code, with a resultant judgment discharging the defendant after sustaining the same. The defendant is in no position to urge a lack of power in the People to appeal because the court indulged him in this behalf so long as the proceeding occurred prior to the impaneling of the jury and thereby fell short of putting him once in jeopardy.

The learned attorney-general also contends that the order made by the court was tantamount to an order setting aside the information. None of the grounds specified for setting aside an information appear to cover the case before us (Pen. Code, sec. 995). We think it more properly comes under subdivision 2 of section 1238 and that the attorney for the defendant had in mind the grounds of demurrer above referred to under subdivisions 1 and 4 of section 1004. The authorities cited by respondent in support of his con- -tention that the People have been given no appeal are not in point and may be disposed of as follows:

*People* v. *Richler,* 113 Cal. 473, 474 [45 Pac. 811], and *People* v. *Higgins,* 114 Cal. 63, 64 [45 Pac. 1004], are cases which arose under section 1238 as it read prior to the amendment of 1897. In other words, at the time these two cases were handed down there was no appeal allowed from an order setting aside an indictment or information and the cases manifestly relate to attempted appeals from orders so made.

*People* v. *Hollis,* 65 Cal. 78 [2 Pac. 893], is not in point as the dismissal there was upon the ground of failure to prosecute, which is neither a ground for demurrer nor a ground for setting aside an indictment or information.

*People* v. *More,* 71 Cal. 546 [12 Pac. 631], was an appeal from an order dismissing an action pursuant to section 1385 where the court on its own motion and in furtherance of justice dismissed said action; therefore, it is not a case even now covered by section 1238.

*People* v. *Knowles,* 27 Cal. App. 498 [155 Pac. 137], and the several other allied cases involving similar actions and reported in the same volume, are not in point for the reason that in those cases the orders appealed from were not orders specified in said section 1238, but were dismissals of actions after jeopardy because the rights of the defendant had been invaded by taking him before the grand jury and thus violating his constitutional right to refrain from giving testimony against himself.

There is no case which we can find nor has any been called to our attention requiring the court to dismiss an appeal by the People made under the circumstances here set forth. It is our view that to give the People the right of appeal from a judgment following an order sustaining a demurrer

and from an order made in arrest of judgment based upon these same grounds and yet to deny them an appeal where, through the courtesy of the court or lack of opposition on the part of the People, the motion did not take the form of a written demurrer would be to sacrifice substance for form.

The second branch of the case involving the question of the sufficiency of the information to charge a public offense must also, as above stated, be resolved in favor of the People. It is true that section 281 of the Penal Code reads as follows: ''Every person having a husband or wife living, who marries any other person, except in the cases specified in the next section, is guilty of bigamy,'' and so reading would, standing alone, be inapplicable to a second marriage without the state (*State* v. *Stephens*, 118 Me. 237 [107 Atl. 296]). But it is also true that section 1106 of said code makes the following provision: ''Upon a trial for bigamy, it is not necessary to prove either of the marriages by the register, certificate, or other record evidence thereof, but the same may be proved by such evidence as is admissible to prove a marriage in other cases; and when the second marriage took place out of this state, proof of that fact, accompanied with proof of cohabitation thereafter in this state, is sufficient to sustain the charge.''

It is further true that these two sections are but a codification of the statute of 1861 (Stats. 1861, p. 415), which in turn was founded upon the statute of 1850 (Stats. 1850, p. 244), each of which read as follows: ''Bigamy consists in the having of two wives or two husbands, at one and the same time, knowing that the former husband or wife is still alive. . . . It shall not be necessary to prove either of the said marriages by the register or certificate thereof, or other record evidence, but the same may be proved by such evidence as is admissible to prove a marriage in other cases, and when such second marriage shall have taken place without this state, cohabitation in this state, after such second marriage, shall be deemed a commission of the crime of bigamy. . . .'' It will be presumed, in the absence of clear legislative intent to the contrary, that the codified act carries the same interpretation as the original one. ''The readoption of these provisions without change in effect adopted the interpretation theretofore placed thereon by the

courts. . . ." (*People* v. *District Court of Appeal,* 193 Cal. 19, 20 [222 Pac. 353], see to the same effect Pen. Code, sec. 5; *Lindsay Strathmore I. Dist.* v. *Superior Court,* 182 Cal. 315, 333 [187 Pac. 1056], and *People* v. *Webb,* 38 Cal. 467.)

The contention of respondent that it was not the legislative intent to include in the definition of "Bigamy," cases where the second marriage occurred without the state of California, is largely based upon the proposition that section 1106 is found under a division title and topical head of the code respecting evidence. While this is true, it is also true that the plain, unambiguous language not only announces a rule of evidence but also declares substantive law. The conclusion that cohabitation in this state was intended to be sufficient is the more readily deduced when it is considered that the first marriage need not, under our own decisions, be performed within the state of California. In other words, bigamy may be punished in this state if the second marriage occurs here even if the first marriage occurred in a foreign state or even a foreign country. (*People* v. *Giesea,* 61 Cal. 53; *People* v. *Priestley,* 17 Cal. App. 171, 176 [118 Pac. 965]; 7 Corpus Juris, p. 1160.) Under these holdings it is not even required that the information contain an allegation of the time or place of the first marriage. If then the first marriage need not occur in the state, it is well within reason to say that cohabitation in this state after a second bigamous marriage, occurring also out of the state should be punishable here upon legislative declaration to that effect. The power of the legislature to so protect society against such an immoral act cannot be questioned. It has been well stated in the case of *State* v. *Stewart,* 194 Mo. 345 [112 Am. St. Rep. 529, 5 Ann. Cas. 963, 92 S. W. 878], as follows:

"The prototype of our statutes on the subject of bigamy and bigamous cohabitation is found in the statute 9 George IV, chapter 31, section 22, which provides that 'if any person, being married, shall marry any other person during the life of the former husband or wife, whether the second marriage shall have taken place in England or elsewhere, every such offender, and every person counseling, aiding or abetting such offender, shall be guilty of felony,' etc. This statute is to all intents substantially reaffirmed in 24 & 25 Victoria, chapter 100, section 57. Many of our sister

states have followed the statute of 9 George IV, conforming it to our American conditions. That the general assembly of Missouri has the power, for the protection of good morals and to punish indecency, to make the cohabitation of a man and woman begun under a bigamous marriage in another state, a felony in this state, there can be no sort of question, and it is practically conceded by the learned counsel for the defendant in this case that if the General Assembly had denominated the offense which it denounced in section 2169 of the Revised Statutes of 1899, a felony only and not bigamy, there could be no constitutional objection to it. Indeed, a similar statute is found in many of our sister states. Thus it is provided by section 4933 of the Iowa Code that, 'If any person who has a former husband or wife living marry another person or continue to cohabit with such second husband or wife he or she, except in the cases mentioned in the following section, is guilty of bigamy.' . . .''

Many states have statutes similar to our own, the only distinction worthy of note being that such declaration is in the same paragraph defining the offense. But the language of section 1106 cannot be held to be a mistake or error on the part of the legislative body for its language is too clear, plain, and ample in its scope to admit of any other construction than that it was intended to constitute evidence of cohabitation in this state, following marriage outside the state, a complete substitute for a second marriage within the state.

The judgment is reversed with directions to the court below to set aside the said order and proceed in due course with the disposition of the case.

Richards, J., Curtis, J., Langdon, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices concurred.