[Civ. No. 571. Fourth Appellate District.—April 25, 1931.]

In the Matter of the Estate of GUY B. CHANDLER, Deceased. IRA J. CHANDLER et al., Appellants, v. CHRISTINA CHANDLER, Respondent.

D. Joseph Coyne for Appellants.

Harry Lyons and Ralph E. Swing for Respondent.

BARNARD, P. J.—Guy B. Chandler died intestate in 1928. His heirs at law and next of kin are a son and daughter by a former marriage, who are appellants in this matter, and his widow, who is administratrix of his estate and respondent herein. A return and report having been filed by a duly appointed inheritance tax appraiser and appraiser for the estate, these appellants filed objections thereto. They also filed a petition for a partial distribution, and in addition objected to the making of a family allowance. The respondent having filed an answer to the

petition for partial distribution, upon stipulation of all parties, all of these matters were consolidated and heard together in the trial court. Appellants concede that the respondent is the widow of this decedent and this entire controversy hinges upon the date of their marriage. The respondent sought to prove that she was married to the decedent on November 22, 1909, while the appellants maintain that no such marriage took place until August 30, 1918. The matter in controversy is whether or not the property left by decedent was community property or the separate property of the deceased. The trial court found that the respondent and the said Guy B. Chandler entered into a valid marriage on the twenty-second day of November, 1909, and were and remained husband and wife from that date until the death of the said Guy B. Chandler. The court also found that the entire estate left by deceased, excepting one particular parcel of real property, was community property. This appeal, which involves all of the property except the parcel last referred to, was taken upon the ground that these findings are not supported by the evidence.

It is apparent, and it is virtually conceded by the appellants, that if the court's finding that these parties were legally married on November 22, 1909, is sustained, the property involved would be community property. Under our view of the record before us, the determination of that question is decisive of this appeal. The respondent testified that she was married to Guy B. Chandler on November 22, 1909, in Tiajuana, Mexico. She testified in considerable detail as to exactly what occurred on that occasion in Tiajuana, describing the parties present, including one man who knew Mr. Chandler; that an interpreter told them to write their names, which she and her husband did; that certain things were repeated that she did not remember; and that the interpreter repeated, in closing, that "You are now pronounced man and wife under the Mexican law." She further testified that at that time a marriage certificate was given to Mr. Chandler; that the following day they returned to her mother's home in Los Angeles, where she introduced Mr. Chandler as her husband; that he then showed her mother the marriage certificate which she read; that her mother read Spanish, having formerly lived in South America; that they remained at her mother's home

that night; and that the following day they returned to San Bernardino and she went to work in the husband's store. ▮ It seems to be settled in this state that a party to a marriage may testify as to its solemnization (sec. 57, Civ. Code; *Estate of Richards*, 133 Cal. 524 [65 Pac. 1034]; *Budd* v. *Morgan*, 187 Cal. 741 [203 Pac. 754]; *Landsrath* v. *Industrial Acc. Com.*, 77 Cal. App. 509 [247 Pac. 227].) ▮ Under the circumstances here shown there is a strong presumption that this was a legal marriage (subd. 30; sec. 1963, Code Civ. Proc.). In *Wilcox* v. *Wilcox*, 171 Cal. 770 [155 Pac. 95, 97], the court quotes with approval from Bishop on Marriage and Divorce, as follows:

"Every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality,—not only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain, against the constant pressure of presumption, the truth of law and fact that it is illegal and void."

Not only is this presumption evidence, in itself, but it has been held that a presumption may, under certain circumstances, even outweigh positive evidence to the contrary. (*Smellie* v. *Southern Pac. Co.*, (Cal.) ▮ 287 Pac. 343).

In addition to this positive testimony and to the presumption referred to, the record discloses some evidence which tends to corroborate the respondent's testimony. One of respondent's sisters testified that she was present at her mother's home when respondent and Mr. Chandler came there in November, 1909; that they told her mother they had been married in Mexico and gave her a paper to read; that her mother read the paper and said "I am sorry you had to go to Tiajuana to get married"; that they remained there that night and left the next day. Another sister of respondent testified that before these parties went to Tiajuana, they told her they were going down there to get married; that she was present at her mother's home the following night when they returned, and Mr. Chandler told them that they were married. The evidence is absolutely uncontradicted that from 1909 until Mr. Chandler died,

nearly twenty years later, these parties continued to cohabit and live together and to deport themselves as man and wife, and that through all of that time they were generally reputed and known, in the community where they lived, as husband and wife. They were so accepted by other members of their families and the deceased's father frequently came to their house and stayed, although he did not live there. In 1912 these parties gave a mortgage upon some real property which they both signed, and in which they are described as husband and wife. We think that under the circumstances here shown, all of these facts could be treated by the trial court as corroborative of, and that they support, the direct testimony of the respondent and the presumption mentioned.

The marriage of these parties having been shown in evidence by some proof, the burden in attacking the validity of that marriage was upon the appellants. (*Wilcox* v. *Wilcox, supra.*) The record is absolutely devoid of any direct evidence to the effect that the marriage of these parties did not take place in 1909. Appellants, however, make a determined attack upon this marriage in two respects, which will now be considered. They first rely upon certain evidence that no record could be found that such a marriage took place at Tiajuana in November, 1909. There was introduced in evidence the deposition of a person who described himself as "Judge of the Civil Register of Ensenada, Lower Cal." He testified that Tiajuana was in his district during the year 1909, but was not now; that he had, in his possession the records of the marriages performed within the district of Ensenada during the year 1909; that he examined these records and did not find any record of a marriage between Guy B. Chandler and this respondent on November 22, 1909, or on any other day of that year. He further testified that he himself took office in August, 1927; that he had all of the records of his office up to the year 1916; and that the law required that the births, marriages and deaths be registered in separate books. Opposed to this was the testimony of a witness who testified that he visited Tiajuana and Ensenada on two occasions and searched through these records; that the records were separate for each month, and in each file there was a record of births, marriages and deaths; that each

month had a different file and that each year was piled together with a string tied around it; that there was a certificate for each month, separately, by the party who made the originals in Tiajuana; that for the year 1909 there were files for eight or nine months only, there being none for November of that year; and that altogether, he only found original records for twenty-seven months. The testimony contained in the deposition, as to the absence of any record of this marriage in 1909, has not only the unsatisfactory nature of such negative evidence in general, but its value seems especially questionable in this case. Not only does it appear that these records were formerly sent from Tiajuana to Ensenada, but the witness having possession of the records had been in charge of them only since 1927, and the system of piling and tying records described, is not one to inspire confidence. Especially is this true, in view of the unsettled conditions in Mexico during the last twenty years. Lost and misplaced records of vital statistics, and even the failure to properly record such matters, are not unknown even in this country, particularly in the smaller communities, and more especially many years ago. If lack of such official records could be taken as conclusive proof that certain facts did not exist, many men of considerable prominence could be proved to have never been born. While the absence of this record was a fact to be considered by the trial court, it is by no means to be taken as conclusive.

 It is next urged by the appellants that a subsequent marriage of these parties conclusively proves that they were not married in 1909. The record contains evidence that these parties were married at Ventura, California, on August 30, 1918. This is conceded by respondent, who explains that fact by stating that a number of newspaper articles appeared about that time to the effect that the governor of Lower California had asserted that such marriages in Tiajuana were void, and that he had advised such parties to be married again. She further testified that when this appeared, Mr. Chandler thought it would be best for them to be married again, and that through his suggestion they did so. The effect of this evidence was to be determined by the trial court, and if the evidence is sufficient to sustain the finding as to a prior marriage the court's

refusal to give a conclusive effect to this evidence cannot be disturbed.

No other evidence was offered by the appellants in any manner contradicting or attempting to contradict the validity of the marriage in 1909, it being even conceded by them that the parties lived together and were reputed to be husband and wife from that day until the husband's death. To rebut the positive evidence of the fact of a marriage in 1909 shown by the record before us, and the presumption above referred to, it was necessary for the appellants to introduce evidence which carried conviction to the mind of the trial court. (*Dierks* v. *Newsom*, 49 Cal. App. 789 [194 Pac. 518].) In this they apparently failed, and no evidence is shown which is sufficient to upset the finding of the trial court in that respect. The most that can be said of the matters relied on by appellants is that they create a conflict. Not only are the findings sustained by the evidence, but, we think, by a preponderance thereof. When two people have lived together as man and wife for nearly twenty years, under the circumstances here disclosed, the validity of their marriage should not be easily set aside. Not only is there no direct evidence to the contrary, but the only evidence relied upon to upset the marriage contains inherent weaknesses which are fully apparent.

The views we have expressed upon the principal question involved render it unnecessary to consider the other points raised.

The order appealed from is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 19, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 22, 1931.