[Crim. No. 318. Fourth Appellate District.—December 21, 1935.]

THE PEOPLE, Respondent, v. BEN FRED JACOBS, Appellant.

(1)

Joseph Seymour for Appellant.

U. S. Webb, Attorney-General, Paul D. McCormick, Deputy Attorney-General, Earl Redwine, District Attorney, and William O. Mackey and John G. Gabbert, Deputies District Attorney, for Respondent.

JENNINGS, J.—The defendant was accused by information of the crime of bigamy and with having suffered a prior conviction of a felony. On arraignment he admitted the prior conviction and plead not guilty of the offense here charged. At the conclusion of the People's case, the defendant moved the court to direct a verdict of acquittal which motion was denied. The trial thereupon proceeded to completion and resulted in a verdict of guilt and subsequent judgment of conviction. Motions for a new trial and in arrest of judgment were presented by defendant and denied. From the judgment and from the orders of the court denying the above-mentioned motions, defendant presents this appeal.

Appellant's first point is that the trial court had no jurisdiction of the offense or of the defendant since the information charged that the alleged marriage took place in the county of Riverside while the evidence showed that the purported marriage occurred in the state of Utah. It must be conceded that the evidence showed that the marriage with Jennie Barton, which formed the basis of the charge of bigamy alleged in the information, was solemnized in the state of Utah. Jennie Barton so testified and her testimony in this regard stands uncontradicted. However, the undisputed evidence also showed that after the marriage with Jennie Barton had been solemnized in Utah appellant came to California; that he sent a telegram to Jennie Barton requesting her to come to San Bernardino, California, and sent her a ticket which entitled her to transportation to Los Angeles, California; that she went to the last-named city where appellant did not meet her on her arrival; that she located appellant in San Bernardino where she subsequently met him; that she remained with appellant in a hotel in San Bernardino for one night and on the following day the two went to Indio in Riverside County, California, where they lived together as husband and wife for approximately one month; that appellant left Jennie Barton in Indio without funds on December 24, 1934; that she then wired her sister at Boulder City,

Nevada, for money which the sister sent her and she thereupon went to Boulder City, where she remained in her sister's home until the latter part of January, 1935, when she went to the city of Riverside where she rejoined appellant and lived with him as his wife at several different places in the last-mentioned city.

The above-narrated evidence demonstrates the unsoundness of appellant's contention of lack of jurisdiction of the offense. The act of solemnization is merely one step in the assumption of the marital status. Cohabitation of the parties subsequent to solemnization is an essential requisite of marriage. Section 1106 of the Penal Code is entitled ''Evidence on a Trial for Bigamy''. It is there provided that upon a trial for bigamy, it is not necessary to prove either of the marriages by documentary evidence but that the same may be proved by such evidence as is admissible to prove a marriage in other cases and that ''when the second marriage took place out of this state, proof of that fact, accompanied with proof of cohabitation thereafter in this state, is sufficient to sustain the charge''. The facts established by the evidence exactly fit the statutory requirement for substantiation of the charge as indicated by the above-quoted language. The scope of the statute is more extensive than the mere announcement of a rule of evidence. It also declares a principle of substantive law notwithstanding the fact that the section occurs under a division title and topical head of the code respecting evidence. The legislature having clearly indicated its intent that a second bigamous marriage which is solemnized outside the state should be punishable on proof of cohabitation within the state leaves no doubt as to the jurisdiction of the trial court over the offense under the circumstances developed by the evidence in this case. (*People* v. *Ellis*, 204 Cal. 39 [266 Pac. 518].)

Appellant's second contention is that the verdict of conviction lacks evidentiary support. In support of this contention it is first pointed out that the information specifically alleged that the bigamous marriage with Jennie Barton was contracted in Riverside County, California, whereas the uncontradicted evidence showed that the marriage occurred in the state of Utah. It is urged that this situation constituted a fatal variance between the accusation and the proof offered in its support. That there was a variance between the charge

contained in the information and the proof submitted in support of the charge is obvious. The information clearly alleged that appellant married Jennie Barton in the county of Riverside on or about November 19, 1934. The evidence showed that the marriage between appellant and Jennie Barton actually took place at Toele, Utah, on the above-stated date. However, the information further alleged that, subsequent to the marriage, appellant lived with Jennie Barton in Riverside County. Since it is clear that cohabitation is an essential element of marriage and the complaint alleged cohabitation in Riverside County subsequent to marriage which was amply sustained by the evidence, it may not be urged successfully that appellant was in any way misled or prejudiced in his defense by reason of the allegation that his marriage to Jennie Barton occurred in Riverside County. ▮ The test of the materiality of variance in an information is whether the pleading so fully and correctly informs a defendant of the offense with which he is charged that, taking into consideration the proof which is introduced against him, he is not misled in making his defense. (*Bar Association of San Francisco* v. *Sullivan,* 185 Cal. 621, 639 [198 Pac. 7] ; *People* v. *Freeman,* 29 Cal. App. 543 [156 Pac. 994].) When this test is applied to the situation which is here presented, the immateriality of the variance is immediately apparent. It may properly be observed that if application had been made the trial court could have ordered the information to be amended to obviate the variance under the provisions of section 1008 of the Penal Code even though the application was not made until after all evidence in the case had been submitted. (*People* v. *DuFault,* 1 Cal. App. (2d) 105 [36 Pac. (2d) 196].)

▮ In support of the contention of evidentiary insufficiency appellant further maintains that there was no sufficient showing that the marriage with Jennie Barton ever took place. It must be conceded that in the prosecution of an individual for having committed the crime of bigamy it is required that the People prove that the marriage which is alleged to have been bigamous was in fact contracted. However, section 1106 of the Penal Code clearly and unmistakably declares that ''upon a trial for bigamy, it is not necessary to prove either of the marriages by the register, certificate, or other record evidence thereof, but the same may be proved by such evidence as is admissible to prove a marriage in other cases''.

Examination of the record discloses that, in addition to the testimony of Jennie Barton that the marriage between appellant and herself was solemnized at Toele, Utah, on November 19, 1934, in the presence of a named minister of the gospel and two named witnesses after a marriage certificate had been obtained which was signed by the minister and the witnesses in her presence, the parties subsequently lived together as husband and wife at Indio and in the city of Riverside. It was also shown that Jennie Barton had introduced appellant as her husband to various persons at Indio and in Riverside and that she received through the mail a number of letters and postcards addressed to her in the handwriting of appellant under the names ''Mrs. Fred Jacobs'', ''Mrs. B. F. Jacobs'' and ''Mrs. F. Jacobs''. The above-mentioned evidence was ample to make out a *prima facie* case of the existence of the marriage relationship which was alleged to have been bigamously contracted. (*Budd* v. *Morgan,* 187 Cal. 741 [203 Pac. 754]; *People* v. *Mock Yick Gar,* 14 Cal. App. 334 [111 Pac. 1039]; *In re Morgan,* 106 Cal. App. 602 [289 Pac. 647]; *Estate of Chandler,* 113 Cal. App. 630 [299 Pac. 110].) It may properly be remarked that the above-described evidence was in no respect contradicted. In particular it is significant that appellant, who took the stand in his own behalf, gave no testimony regarding the marriage which it was alleged he had bigamously contracted with Jennie Barton. Under these circumstances, appellant's complaint that a marriage in fact was not established by the evidence is manifestly lacking in merit.

In connection with his claim of evidentiary insufficiency, appellant also contends that the existence of an undissolved marriage between himself and his first wife was not established by the evidence. This contention is likewise untenable. The first wife was present in court and testified fully as to the solemnization of her marriage with appellant, their cohabitation as husband and wife at various places in California, that five children were born as the issue of the marriage, and that, so far as she was informed, the marriage had never been dissolved by judicial decree. Appellant testifying as a witness for himself made no denial of the existence of the marriage between himself and his first wife and in effect admitted its existence. The above-described evidence was ample to establish a *prima facie* showing of the fact of a fully con-

summated marriage which was in existence at the time he contracted a marriage with Jennie Barton.

Appellant also contends that the evidence showed that, at the time the alleged bigamous marriage with Jennie Barton was contracted, he had not heard from his first wife for more than five years and that he is therefore exempt from the charge of bigamy of which he has here been convicted by reason of the exception contained in subdivision 1 of section 282 of the Penal Code. Subdivision 1 of section 282 provides that the definition of bigamy as given in section 281 of the Penal Code does not extend to any person by reason of any former marriage whose husband or wife by such marriage has been absent for five successive years without being known to such person within that time to be living.

The evidence respecting this particular feature of the case is not entirely free from conflict. The first wife of appellant called as a witness for respondent was asked on direct examination to give the approximate date of her last conversation with appellant to which she replied that she could not remember the exact date. The following inquiry was then propounded to her: "How could you fix that date, Mrs. Jacobs?" To this question she gave the following answer: "About 1931, I believe." If the jury accepted this testimony as true and correct, it is obvious that appellant was not exempt from the charge of bigamy lodged against him since the uncontradicted evidence showed that his marriage with Jennie Barton took place on November 19, 1934, less than the statutory period of five years after he had actually seen his first wife and knew that she was then living and that he was still married to her. However, it should be noted that, on cross-examination, the above-mentioned witness testified that the last time she saw appellant was at some time between the first and fifteenth of September, 1929. The appellant himself testified that he last saw his first wife about the middle of September, 1929, that he had not heard from her since that time and that, on November 18, 1934, he believed that she was dead.

In connection with appellant's claim of exemption from the charge of bigamy, it should also be noted that the first wife testified that appellant did not leave her, that the work in which he was engaged rendered it necessary for him to be absent from his home at frequent intervals, and that at times he sent for her and took her with him for some unspecified period.

This testimony is relied upon by appellant as indicating that he could not properly be charged with having voluntarily absented himself from his home. However, the same witness testified that the last place in which the parties lived together was in San Francisco and that, after their separation, she continued to live in San Francisco for a time and then moved to Oakdale where she took up her residence in her mother's home. It is again significant that appellant made no showing that he had ever endeavored to locate his former wife during the five years that elapsed after he had seen her in San Francisco although during two years of this five-year period he duly complied with one of the conditions of his parole from San Quentin prison, where he had been confined as punishment for a former bigamous marriage by regularly sending money for the support of his children.

Taking all of the evidence in the case which bears upon appellant's claim of exemption from the charge of bigamy because of the provisions of subdivision 1 of section 282 of the Penal Code, it is our opinion that the claim is not sustainable. The above-mentioned section does not specify from whom or from what place the husband or wife must have been absent to entitle the other party to the marriage to the benefit of the exception. However, it is not beyond the bounds of reason to indulge in the assumption that, in adopting the law, the legislature had in mind an established home from which one of the spouses should absent himself or herself for a period of five successive years without giving to the remaining spouse any information as to where he or she might have gone or whether he or she still lived. The situation disclosed by the evidence in the instant case clearly does not entitle appellant to the benefit of the statutory exemption. It was certainly he who voluntarily absented himself from his first wife and from the home. She remained in the home with the children of whom appellant was the father. Appellant's testimony that he believed her dead prior to the time he contracted the marriage with Jennie Barton evidently did not commend itself to the jury. The jury was not bound to accept the statement as true emanating as it did from a person whose interest in the outcome of the case was unquestioned and further from a person who had theretofore been convicted of an exactly similar felony to that with which he was here accused. Furthermore, appellant's first wife was not dead when he con-

tracted the marriage with Jennie Barton and if it be assumed that he testified truthfully that he believed that she was dead he was mistaken in a belief in which, under the circumstances here shown, he was not justified in indulging.

 Appellant maintains that the trial court unduly and improperly extended the scope of appellant's cross-examination. It is particularly urged that the court committed reversible error in permitting certain questions to be asked on cross-examination pertaining to one Sente Theresa Sieveking. The following inquiry which was allowed to be propounded over appellant's objection may be cited as illustrative of appellant's position: "Now, Mr. Jacobs, when Sente Theresa Sieveking in Los Angeles asked you to marry her when she became pregnant, isn't it a matter of fact that you told her you could not because you had a wife living?" It must be conceded that on direct examination no question was asked which related to the above-mentioned person. However, the last inquiry propounded to appellant on direct examination was whether it was his opinion on November 18, 1934, that his first wife was dead to which he replied that it was. The first question asked on cross-examination was when he arrived at the above-mentioned opinion, to which he replied that he thought it was about the month of January, 1930. He was then asked if he had retained the opinion ever since the last-mentioned date, to which an affirmative answer was returned. The above-quoted inquiry was then allowed to be propounded.

It is apparent that the purpose of the inquiry was to impeach appellant's prior·statement that he believed his first wife was dead by showing that, at a time subsequent to January, 1930, he·had told another woman that he could not marry her because he had a wife living. Unfortunately, the inquiry did not specify the date on which the impeaching statement was made nor is the date given in any subsequent inquiry. We think, therefore, that the court erred in permitting the question to be asked in the form in which it appears. Conceivably, the statement might have been made at some time prior to January, 1930. However, appellant's answer to the question was that he had never made such a statement to anyone. No evidence was produced which tended to prove that appellant had made the statement sought to be attributed to him. His denial remained uncontradicted and we must assume that the jury so regarded it when it con-

sidered all the evidence which had been produced during the trial. It should be noted that, over his objection, appellant was then asked if he knew Sente Theresa Sieveking, to which he replied that he did not remember. We regard the last-mentioned inquiry as harmless.

It is also urged that the trial court erred in permitting the following inquiry to be answered on cross-examination over appellant's objection: "Did you give your age to Lyle G. McNeile, physician at the Cedar of Lebanon Hospital on September 15, 1933?" This question was permitted to be answered as tending to show that, on the date specified, appellant had made a statement regarding his age which was inconsistent with the testimony as to his age given by him on direct examination. To this question appellant replied that he had never been in the hospital named in the inquiry and that he did not know Dr. McNeile. We think that no error was committed in permitting the question to be asked and answered.

Greater difficulty is encountered in giving consideration to appellant's charge that the district attorney was guilty of serious misconduct in propounding to appellant on cross-examination the following inquiry: "Now when Balus Forest Jacobs was born in Los Angeles on September 15, 1933, did you give your age to Lyle G. McNeile, physician who had charge of the case?" The last quoted question immediately preceded the inquiry which is outlined in the immediately preceding paragraph. The trial court properly sustained appellant's objection to the question.

It is obvious that the question containing a reference to the birth of the child in Los Angeles should not have been asked. The apparent purpose of making the inquiry which was to show that an inconsistent statement respecting his age was made by appellant on the date specified is overshadowed by the reference to the birth of the child bearing the same name as that of appellant. The deputy district attorney who conducted the cross-examination of appellant was undoubtedly guilty of misconduct in making the inquiry in the form in which it appears. However, the record discloses that appellant's counsel did not assign the asking of the question as misconduct nor did counsel request the trial court to instruct the jury to disregard the question. On the contrary, the attorney merely objected to the question on various grounds and

as above noted the objection was promptly and properly sustained. Under these circumstances the complaint of misconduct entitling appellant to a reversal of the judgment comes too late on this appeal and may not prevail (*People* v. *Kramer*, 117 Cal. 647 [49 Pac. 842]; *People* v. *Panagoit*, 25 Cal. App. 158 [143 Pac. 70]; *People* v. *Spady*, 64 Cal. App. 567 [222 Pac. 191]).

■ Appellant excepted to certain remarks made by the prosecutor in his closing address to the jury and now contends that the making of them constituted misconduct entitling him to a reversal of the judgment. Examination of the statements to which exceptions were thus taken impels the conclusion that appellant's complaint in this regard is not well taken and may not be sustained.

■ Appellant cites as fatally erroneous and prejudicial the admission of certain evidence by the trial court. This evidence consisted of the testimony of two witnesses called by respondent and certain documentary evidence. The last mentioned evidence was a carbon copy of a certificate which was shown to be a voter's registration certificate which was discovered among the personal belongings of appellant. The witness who identified the certificate testified that she was familiar with appellant's handwriting and that the signature which appeared on the certificate was that of appellant. The certificate bore the date December 10, 1934, the residence address of the voter, which was stated to be 1110 Ingraham Street, and the name which appeared thereon was "Balus F. Jacobs". The information alleged that the offense specified therein had been committed by Ben Fred Jacobs "also known as Balus Forest Jacobs". The document was admitted on the theory that it showed that appellant went under the name which appeared on the certificate in addition to the other name stated in the information. No error was committed in the admission of the evidence.

■ The oral evidence of whose admission appellant complains consists of certain testimony given by two of respondent's witnesses. These witnesses were Jennie Barton Jacobs who was the complaining witness against appellant and Irma Jacobs. The former, who identified the registration certificate mentioned in the preceding paragraph, was permitted to testify over appellant's objection that after she had discovered the certificate she went to the address given therein which

she found was an apartment house, that she examined the register and found the names "Mr. and Mrs. B. F. Jacobs" appearing thereon, that she learned "they had moved from that apartment house" and that "they moved to a house on Wilshire boulevard" which was also an apartment house, that she visited the last-mentioned house, which was at 1901 Wilshire Boulevard, and there discovered a woman "who called herself the wife and a baby whom she said Mr. Jacobs was the father of". It is useless to attempt to excuse the admission of much of the above-described evidence, particularly that part of the testimony relating to the discovery of a woman who said she was appellant's wife and the baby of whom appellant was declared by this woman to be the father. There are numerous exceptions to the fundamental rule of evidence which precludes the admission of hearsay evidence. We know of none that would condone the reception of such patent hearsay evidence as that of which particular complaint is here presented. That it was prejudicial to appellant is scarcely open to doubt. Nevertheless, section 4½ of Article VI of the Constitution of California expressly prohibits a reviewing court from reversing a judgment for the improper admission of evidence "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice". Thorough and careful examination of the record herein has produced a settled conviction that the manifest error in the admission of the evidence did not result in a miscarriage of justice. It is our opinion that no other determination could have been reached by the jury than a verdict of guilt if the evidence improperly admitted had not been received.

Appellant's complaint respecting the improper admission of the testimony of Irma Jacobs is based principally on the fact that it brought to the attention of the jury facts which it is contended were not merely immaterial and incompetent but also highly prejudicial to appellant's rights. It appeared that because of a marriage which appellant had contracted with this witness he suffered a prior conviction of bigamy on December 30, 1927, and was punished therefor by being sentenced to confinement in San Quentin prison, which sentence he served. This was the prior conviction alleged in the information which appellant admitted upon arraignment.

The testimony elicited from the witness which it is contended was improperly admitted related to her marriage with appellant. She was allowed to testify that she married appellant on January 31, 1927, at San Jose, California, and that she had taken no action to have the marriage dissolved. If it be assumed that the admission of this evidence was erroneous it does not appear that appellant was in any respect prejudiced by its reception. Appellant had admitted the prior conviction of bigamy alleged in the information. The admission necessarily implied the existence of a bigamous marriage prior to that for which appellant was here prosecuted. The testimony of the witness simply established the fact of the prior marriage.

However, it is our opinion that the evidence was properly admitted. Appellant testified that he believed that his first wife, Mary Agnes Jacobs, was dead. The effect of this testimony was to negative the existence of an intent to commit the crime for which he was being prosecuted. It is settled that evidence of the commission of other crimes is admissible if it tends to establish intent or guilty knowledge particularly where an accused claims that he had no such intent or knowledge as to the commission of the crime (*People* v. *Hendrix,* 192 Cal. 441 [221 Pac. 349]; *People* v. *McGill,* 82 Cal. App. 98 [255 Pac. 261]; *People* v. *Bonilla,* 124 Cal. App. 212 [12 Pac. (2d) 64).]

Appellant complains that the trial court erred in the instructions which it gave to the jury and that it improperly refused to give forty-four instructions which he offered. In presenting this contention appellant's brief on appeal refers to these instructions by number and by very incomplete suggestion of their contents without in any instance presenting the full text of the instruction. Nor has appellant presented, in connection with instructions claimed to have been erroneously refused, other instructions given by the court bearing upon the subjects covered by the refused instructions. It is therefore evident that appellant has failed to comply with section 3, rule VIII of the rules governing practice in this court and in the absence of more definite criticism we are justified in the belief that the instructions given by the trial court were free from serious error and that instructions which were offered by appellant and refused were properly refused (*People* v. *White,* 102 Cal. App. 647, 649 [283 Pac. 368];

*People* v. *Reese,* 136 Cal. App. 657, 674 [29 Pac. (2d) 450]).

In support of his contention that the trial court erred in refusing to direct the jury to return a verdict of acquittal at the close of respondent's case and in refusing his motion for a new trial and his motion in arrest of judgment, appellant has presented no contentions different from those presented on his appeal from the judgment. Review of the record impels the conclusion that no error was committed by the court in its denial of each of the aforesaid motions.

The judgment and orders from which this appeal has been taken are therefore affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 4, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 20, 1936.