[Civ. No. 5187.   Fourth Dist.   Aug. 13, 1956.]

RICHARD McMURREN, Appellant, v. BETTY M. McMURREN, Respondent.

Floyd H. King for Appellant.

Stephen C. Johnson for Respondent.

MUSSELL, J.—Plaintiff, in his complaint for divorce filed herein, alleged that he and the defendant, Betty M. McMurren, were married in Portsmouth, Virginia, on August 4, 1951; that they separated on September 7, 1954; that there were no children the issue of said marriage and that there was no community property.   The defendant, in her answer, admitted that the parties participated in the marriage ceremony at Portsmouth on or about August 4, 1951, and in her cross-complaint she alleged that ever since August 4, 1951, the plaintiff and defendant have been known as husband and wife and that there has been no other ceremony of marriage by or between them.   It was further alleged in the cross-complaint that at the time of said purported marriage plaintiff was the husband of Terry Lynn McMurren, and that the marriage of said plaintiff and Terry Lynn McMurren had not been dissolved or annulled and was in full force and effect.   The prayer of the cross-complaint was that the purported marriage

between plaintiff and defendant on August 4, 1951, be declared null and void.

Trial was had on the issues presented by the pleadings. The court found that the allegations of the cross-complaint were true and rendered judgment that the marriage between cross-complainant and Richard McMurren was null and void.

The sole contention of appellant Richard McMurren is that "There is no substantial evidence to support a valid marriage under California law between plaintiff and Terry Lynn."

The evidence relating to the marriage of appellant and Terry Lynn is contained in the deposition of appellant and in the testimony of Terry Lynn at the trial. She testified that on March 9, 1951, she and appellant went to Tijuana, Mexico; that "We went down to one of the justices of the peace, or whatever they call them down there, and we asked if we could get married and they said that we could"; that they were introduced to two Mexican people in the room who were to be witnesses; that she and appellant were asked to look over the papers; that they signed their names, raised their right hands and were "sworn in" regarding the truth of their statements; that appellant furnished a ring and placed it on her finger in the presence of the witnesses and that the officiating officer then pronounced them man and wife; that they gave their names and addresses to the officiating officer and then went back to Long Beach; that the marriage certificate or papers were sent to appellant and that he gave an address to which all documents were to be sent; that she and appellant lived together at Long Beach from March 9, 1951, for about a month, when he was transferred to the east coast; that she had not filed any divorce action against the appellant and had never received any divorce papers from him or from his attorney.

Appellant stated in his deposition that on March 9, 1951, at Tijuana, Mexico, he married Terry Lynn; that he and Terry then returned to Long Beach; that they lived together for one week and he then left for the east coast; that he received a piece of paper as to the marriage in Tijuana but that he had thrown it away; that he gave the clerk in Tijuana his name and address; that he told his folks that he was married to Terry Lynn; that when he and Terry went to Tijuana they filled out some papers and signed them and were told that they were married and that some further papers would be sent to him; that he and Terry did not take any oath

or swear to any statements; that he did not know the official status of the man he saw in Tijuana; that he paid him $30 and sent an additional $5.00 to him the following payday; that he and Terry spent about 30 minutes in the office in Tijuana "filling out papers and asking questions."

The foregoing testimony and the reasonable inferences to be drawn therefrom, together with the presumption that the marriage of March 9, 1951, was valid and legal are sufficient to support the findings and judgment of the trial court. (*Estate of Crawford,* 69 Cal.App.2d 609 [160 P.2d 65] ; *Estate of Chandler,* 113 Cal.App. 630 [299 P. 110].) In *Estate of Chandler,* the facts were quite similar to those in the instant case. In the Crawford case the decedent and respondent, residents of Los Angeles, went to Tijuana and while there decedent went into an office to see if they could get married. When he came out, he told respondent they could get married and then they both went in. While in the office they signed papers and answered questions put to them by a Mr. Soriano. Decedent paid this man $23, whereupon he told them to stand up, pronounced them man and wife, and congratulated them. Before they left he told them they would get some papers later on. These papers were received by decedent and respondent by mail about two weeks afterward. They were received in evidence and show a proxy marriage in Juarez, Mexico, based upon the appearance of the parties at Tijuana, and their nomination of proxies. The court held that, based upon the testimony of a marriage ceremony in Tijuana and subsequent cohabitation of the parties, the court was entitled to apply the presumption that the marriage was valid and legal and that since there was substantial evidence in support of the presumption, the court was without power to set the marriage aside. (Citing *Estate of Chandler, supra.*)

The judgment is affirmed.

Barnard, P. J., and Burch, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.