[Crim. No. 4017. First Dist., Div. One. Mar. 14, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. CARL RAYMOND DUNN, Defendant and Appellant.

Harry E. Rice, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—In this appeal from a conviction of bigamy appellant fails to establish his chief contention that California cannot properly punish appellant for a bigamous

marriage solemnized outside of this state, even though it was followed by cohabitation in California. As we shall point out, we believe the offense to the sovereignty of California rested upon the cohabitation, which, subsequent to the unlawful union, occurred within its territory; such cohabitation under California statute conferred the requisite jurisdiction.

The information charges appellant with bigamy (Pen. Code, § 281) in that he married Dorothy E. Jones in the County of Alameda, State of California, on or about March 25, 1961, at which time he had a lawful wife living; it further alleges that appellant unlawfully cohabited with Dorothy E. Jones in Alameda County, from April 1, 1961, until May 5, 1961.

Borghild Haugen, the former Mrs. Dunn, testified that she married appellant in Virginia City, Nevada, on November 14, 1959. The prosecution placed the marriage certificate into evidence. The parties lived together, after the marriage, in Oakland and later in Berkeley. On December 13, 1960, appellant left Berkeley without telling his wife, later sending a letter informing her he was going to Canada. On December 30, 1960, Mrs. Haugen filed for divorce; appellant was served on May 3, 1961, and the court entered a default judgment on May 25, 1961.

Dorothy Jones testified that she met appellant in Oakland in January 1961. She married appellant in Stevenson, Washington, on March 25, 1961. The prosecution entered this marriage certificate into evidence. The parties lived together as man and wife in Oakland, California, until May 6th or 7th, when Mrs. Haugen contacted Mrs. Jones and informed her of appellant's former marriage.

Appellant waived his right to a jury trial; the court found him guilty as charged and sentenced him to confinement in the state prison. Appellant appeals from the conviction.

As our subsequent analysis will demonstrate, we find no merit in appellant's three bases for reversal: an alleged failure to identify appellant as the wrongdoer, an asserted claim that California lacked jurisdiction of the crime because both marriages were solemnized outside of California even though the bigamous union was followed by cohabitation in California, and a contention that a fatal variance developed between the information and the proof.

Appellant's first point that the witnesses did not identify him as the Mr. Dunn who entered into the bigamous marriage cannot stand in the face of the record. Appellant's argument that the witnesses merely referred to *a* "Mr. Dunn" and did

not fix him as *the* Mr. Dunn guilty of the bigamous union ignores the testimony which inculpated him as the bigamous partner to the unlawful marriage.

The first witness, Mrs. Haugen, who was appellant's first wife, clearly identified him as the defendant sitting in the courtroom. The prosecution asked her, "While you were in the United States did you meet *the defendant*, Mr. Dunn?" (Emphasis added.) She answered, "Yes, I did." When questioned, "You see him over there in the courtroom?" she replied, "Yes, I do." Although Mrs. Haugen did not actually point to appellant, her testimony leaves no doubt that she obviously referred to him.

The ensuing testimony refutes appellant's statement that he "was not identified as the person who entered into a subsequent marriage" but was merely "a Mr. Dunn" of an amorphous class of Mr. Dunns. The transcript shows that the question related to the defendant, Mr. Dunn, whom the previous testimony showed to be the person sitting in the courtroom. The prosecution did not ask Mrs. Jones, as appellant contends, whether she met and married an anonymous Mr. Dunn but whether she met and married the identified defendant Dunn. The record reads: "Q. All right, and you were married prior to meeting *the defendant*, Mr. Dunn? A. Yes, I was. . . . Q. When did you meet *the defendant*, Mr. Dunn? A. I think it was in January of 1961. . . . Q. And did you subsequently marry him? A. Yes." (Emphasis added.)

Appellant's citation of *People* v. *Wong Sang Lung* (1906) 3 Cal.App. 221 [84 P. 843] does not aid him in this vain attempt to evade the identification. In that case, a murdered man, in a dying declaration, named "Wong Lung" as his assailant. The murdered man obviously did not appear in court to identify Wong Sang Lung as his assailant; at the trial the defense proved that many Chinese in San Francisco bore the name of Wong Lung. In the present case, the witnesses identified the defendant, Mr. Dunn, who, indeed, sat visibly and physically in the courtroom. Although appellant introduced no evidence that "Mr. Dunn" constituted a common name, he finally and somewhat incongruously asks us to take judicial notice of the persons named "Dunn" listed in the Oakland telephone directory. The request and the argument dissolve in the clear light of the record.

Appellant's ingenious second point that a California court cannot convict a person for bigamy in a case involving the celebration of both the first and second marriages outside

of this state, even though the parties cohabited in California after the bigamous marriage, cannot be reconciled with California statute or decision. The decisions of this state, based upon the applicable legislation, which we shall more fully explore *infra*, declare that the offense to California's sovereignty lies in the cohabitation in this state after the foreign bigamous marriage. (*People* v. *Ellis* (1928) 204 Cal. 39, 45 [266 P. 518]; *People* v. *O'Brien* (1950) 97 Cal.App.2d 391 [217 P.2d 678].) As *People* v. *Jacobs* (1935) 11 Cal. App.2d 1, 5 [52 P.2d 945] states, "[t]he act of solemnization is merely one step in the assumption of the marital status. Cohabitation of the parties subsequent to solemnization is an essential requisite of marriage." To expose the error of appellant's basic position we separately dissect the subpremises upon which it rests.

Appellant's first subsidiary point that California cannot punish appellant for the foreign offense of the bigamous marriage celebrated in Washington ignores the California statute. While it is true that generally the celebration of a second marriage completes the offense of bigamy and that the state of celebration then exercises an exclusive jurisdiction over the offense (7 Am.Jur. § 4, p. 750; 10 C.J.S. § 5, pp. 363, 365), a state may penalize the further act of cohabitation, within its borders, following the bigamous union. Such a statute does not punish the foreign offense but the flaunting of the sovereignty of the forum state by the commission of the proscribed act within its territorial jurisdiction. Such legislation, which is not uncommon, has been upheld. (10 C.J.S. § 5, pp. 363, 365; 7 Am.Jur. § 4, pp. 750-751; *State* v. *Lewis* (1955) 46 Wn.2d 438 [282 P.2d 297]; 70 A.L.R., p. 1036.) The California statute falls within this group.

Since the Supreme Court in *People* v. *Ellis, supra,* 204 Cal. 39, 45, has specifically held that Penal Code section 1106 pertains to the above-described situation, appellant seeks to avoid the decision upon the grounds that section 1106, despite the decision, sets up procedural rather than substantive rules, and that the case does not apply here because, unlike *Ellis*, the first marriage did not occur in California. *Ellis* clearly holds that, although section 1106 appears in part II of the Penal Code, which deals with criminal procedure, rather than part I, which sets out the definition of crimes, the section establishes both a rule of evidence and of substantive law. The section reads: "Upon a trial for bigamy, it is not necessary to prove either of the marriages by the

register, certificate, or other record evidence thereof, but the same may be proved by such evidence as is admissible to prove a marriage in other cases; *and when the second marriage took place out of this state, proof of that fact, accompanied with proof of cohabitation thereafter in this state, is sufficient to sustain the charge.*" (Emphasis added.) The court stated in *Ellis* that "the plain, unambiguous language [of § 1106] not only announces a rule of evidence but also declares substantive law." (P. 45.) And in *People* v. *Jacobs, supra,* 11 Cal.App.2d 1, 5, the court observes that "[t]he scope of the statute is more extensive than the mere announcement of a rule of evidence. It also declares a principle of substantive law notwithstanding the fact that the section occurs under a division title and topical head of the code respecting evidence."

The California legislative history corroborates these conclusions. Thus the first enactment as to bigamy provided: "Bigamy consists in the having of two wives or two husbands at one and the same time, knowing that the former husband or wife is still alive . . . and when such second marriage shall have taken place without this State, cohabitation in this State, after such second marriage, shall be deemed the commission of the crime of bigamy." (Stats. 1850, ch. 99, § 121, pp. 229, 244.) An 1861 amendment to the section did not affect the provision as to a marriage outside of California. In 1872 the Legislature enacted Penal Code section 281, which incorporated the first part of the original enactment, and section 1106, which contained the second part. (*People* v. *Ellis, supra,* 204 Cal. 39, 44.) Deering's Penal Code Annotated points out that section 1106 emanates from the original 1850 enactment. The intent of the Legislature is registered in these enactments, and the *Ellis* court would have had blatantly to bifurcate it in order to hold that section 1106 exclusively expressed a procedural provision.

Appellant's further attempt to avoid the impact of *Ellis* upon the ground that in the instant case the first marriage took place in Nevada, while in *Ellis* it occurred in California, establishes a difference but not a distinction. ▆ In a bigamy case the locus of the *first* marriage generates no issue of materiality; as the court in *Ellis* says, "Under these holdings, it is not even required that the information contain an allegation of the time or place of the first marriage. ▆ If then the first marriage need not occur in the state, it is well within reason to say that cohabitation in this state after a

second bigamous marriage, occurring also out of the state should be punishable here upon legislative declaration to that effect.'' (P. 45.)

 We turn to appellant's second subpremise to avoid the holding that he can properly be prosecuted for bigamy in California. We think his emphasis upon the words ''second marriage'' in section 1106, to show that the section applies only if the first marriage occurred in California, misconceives the purpose of the statute. Because the section does not include ''first'' as well as ''second'' marriage, appellant argues that the Legislature meant to establish a different rule if the first marriage were celebrated outside of this state. Isolating a few words of the statute, appellant extracts from them an intent utterly in conflict with the whole purpose of the legislation. Nothing in the enactment justifies the conclusion that the Legislature established a different rule for the situation in which both marriages took place outside the state or that any reason would support such a differentiation.

 Appellant's final subsidiary point, to avoid *Ellis*, and the impact of the statute, rests upon the contention that his crime consisted of nothing more than a misdemeanor; that he violated only sections 269a and 269b of the Penal Code, which declare that cohabitation and adultery are misdemeanors. Appellant, however, has done more than engage in illegal cohabitation; *subsequent to a foreign bigamous marriage* he has engaged in illegal cohabitation. The Legislature has seen fit, in protecting the public morals, to levy a greater penalty upon the latter than the former offense. Analogizing this situation to that of an illegal possession of a firearm, the Legislature may provide one penalty for possession of the firearm by *any* person, and another sanction for such possession by an ex-felon, whether or not his prior felony occurred in California. The Legislature may penalize the same act by different sanctions which are determined by other, but relevant and crucial, factors.

We conclude that appellant has failed to show a lack of jurisdiction in the California courts to punish the instant offense; appellant's subsidiary points fail; appellant remains bound by *Ellis.*

Appellant's final point that the judgment cannot stand because of a material variance between the pleading and the proof finds its answer in *People* v. *Jacobs, supra*, 11 Cal. App.2d 1. The information charges that appellant unlawfully married Dorothy E. Jones on March 25, 1961, in

Alameda County, and that he cohabited with her as husband and wife in Alameda County from April 1, 1961, until May 5, 1961. Appellant contends that because the prosecution showed that the marriage actually took place in Washington, the information contained a fatal variance.

In *Jacobs*, the information charged a bigamous marriage in Riverside County, while the marriage actually occurred in Utah. The parties cohabited in Riverside County, and the information so alleged. The court there stated: "Since it is clear that cohabitation is an essential element of marriage and the complaint alleged cohabitation in Riverside County subsequent to marriage which was amply sustained by the evidence, it may not be urged successfully that appellant was in any way misled or prejudiced in his defense by reason of the allegation that his marriage to Jennie Barton occurred in Riverside County. ▇▇▇ The test of the materiality of variance in an information is whether the pleading so fully and correctly informs a defendant of the offense with which he is charged that, taking into consideration the proof which is introduced against him, he is not misled in making his defense." (P. 6.)

▇▇▇ The location of the second marriage is immaterial if it is followed by cohabitation in California. Moreover, the information set out the date of the purported bigamous marriage and the name of the person appellant allegedly married. Appellant knew the nature of the offense with which he was charged; he was not misled.

We affirm the judgment.

Bray, P. J., and Sullivan, J., concurred.